No. 75–6898. Freeman *v.* Zahradnick, Penitentiary Superintendent. C. A. 4th Cir. Certiorari denied.

Mr. Justice Stewart, dissenting.

Mr. Justice Marshall's dissent from the denial of certiorari expresses "grave doubts" that there was any evidence at all to support the petitioner's conviction. Although unable to accept the view that this conviction is susceptible of challenge under the "no evidence" rule of *Thompson* v. *City of*

*Louisville,* 362 U. S. 199, I would grant certiorari to reconsider the doctrine of the *Thompson* case in the light of this Court's more recent decision in *In re Winship,* 397 U. S. 358.

The *Winship* case held that the Due Process Clause requires proof beyond a reasonable doubt of every element of a criminal offense. A jury must be instructed accordingly. Properly instructed juries, however, occasionally convict even when it can be said that no rational trier of fact could find guilt beyond a reasonable doubt—even when it is clear that the defendant was entitled to a directed verdict of acquittal as a matter of law. In a federal trial, such improper application of law (as defined by *Winship*) to fact requires reversal of the conviction on the ground of insufficient evidence.

The power of a federal court to review the application of federal law to the facts as found also operates, however, in criminal cases originating in state courts. On direct review of a state-court conviction, this Court reviews the application of the "voluntariness" standard to the historical facts to determine whether a confession was admissible,[1] or the application of First Amendment standards to the facts as found to determine whether the conduct in issue was constitutionally protected,[2] to take but two examples. The same rule is applied in federal habeas corpus actions. See generally *Townsend* v. *Sain,* 372 U. S. 293, 318; *Brown* v. *Allen,* 344 U. S. 443, 506–507 (opinion of Frankfurter, J.). It is not immediately apparent why application of the beyond-a-reasonable-doubt standard of *Winship* to the historical facts should be any more immune from constitutional scrutiny. If, after viewing the evidence in the light most favorable to the State, cf. *Glasser* v. *United States,* 315 U. S. 60, 80, a federal court determines that no rational trier of fact could have found a defendant guilty beyond a reasonable doubt of the state offense with which he

---

[1] *E. g., Haynes* v. *Washington,* 373 U. S. 503, 515–516; *Watts* v. *Indiana,* 338 U. S. 49, 50–52 (opinion of Frankfurter, J.).

[2] *E. g., Fiske* v. *Kansas,* 274 U. S. 380.

was charged, it is surely arguable that the court must hold, under *Winship*, that the convicted defendant was denied due process of law.

What I am suggesting is simply that the question whether there was sufficient evidence to support a finding by a rational trier of fact of guilt beyond a reasonable doubt may be of constitutional dimension. Such a view would not require federal courts to second-guess state-court findings of fact or a State's definition of the elements of a crime.[3] Rather, the federal courts would no more than perform a familiar and appropriate role—reviewing the *application* of a substantive federal standard (the requirement of proof beyond a reasonable doubt) to the historical facts.

The Court's decision in *United States* v. *Romano,* 382 U. S. 136, provides support for the approach I have described. *Romano* held that it was a violation of due process to instruct a jury that presence of a defendant at the site of an illegal still " 'shall be deemed sufficient evidence to authorize conviction [of possession of the still].' " *Id.,* at 138. The Court disapproved that instruction because no rational jury could infer possession simply from the fact of presence. And in doing so, it relied upon the decision in *Bozza* v. *United States,* 330 U. S. 160, that presence alone was *insufficient evidence* to convict of possession. See 382 U. S., at 140–144. It seems to me that whether the jury has been expressly instructed that it could (though need not) make an irrational inference— as in *Romano*—or simply does so on its own—as in *Bozza*— is probably of no consequence. A jury that convicts in either case would appear to be acting equally irrationally and

---

[3] A State does not have total freedom in this regard, however. It may not characterize a fact which in substance is an element of the offense as an affirmative defense, *Mullaney* v. *Wilbur,* 421 U. S. 684, and a state court may not adopt a construction of an offense that fails to give fair warning that certain conduct is deemed criminal, *Bouie* v. *City of Columbia,* 378 U. S. 347.

equally in derogation of the Due Process Clause's requirement of proof beyond a reasonable doubt.

The Court said in *Thompson* v. *City of Louisville* that the question in that case turned "not on the sufficiency of the evidence, but on whether [the] conviction rests upon any evidence at all." 362 U. S. 199; accord, *Garner* v. *Louisiana*, 368 U. S. 157, 163; *Shuttlesworth* v. *Birmingham*, 382 U. S. 87, 94. But the logical application of the "no evidence" doctrine is not an easy matter. "[A] mere modicum of evidence may satisfy a 'no evidence' standard . . . ." *Jacobellis* v. *Ohio*, 378 U. S. 184, 202 (Warren, C. J., dissenting). Any evidence that is relevant—that has any tendency to make the existence of an element of a crime slightly more probable than it would be without the evidence, cf. Fed. Rule Evid. 401—could be thought to be a "mere modicum." Evidence that a defendant is a narcotics addict makes it more likely that he has stolen property (to finance his habit) than it would be without such evidence. Can it therefore be said that there is "some evidence" that the addict is a thief? If not, can any definable content be discerned in the "no evidence" rule? Indeed, in the *Thompson* case itself, could it fairly have been said that the mere fact that the defendant was found in a café, rather than home in bed, was *some* relevant evidence that he was guilty of loitering and disorderly conduct?

My tentative view is that where the evidence falls far short of supplying adequate proof of guilt for a rational trier, to require judges to determine how speculative is too speculative to satisfy the no-evidence rule is to require the impossible. The ordinary standard of "sufficiency of the evidence," by contrast, is one familiar to state and federal judges and lawyers. Although like most legal standards it is not reducible to any mechanical formula, it does have a stable content permitting predictable adjudication.

A sufficiency standard would not only be more certain in application, but also far truer to the constitutional rationale

of *Winship*. For the law as it now stands—with only the *Thompson* rule in force—can lead to bizarre results. Defendant A, whose guilt is conclusively established by 20 eye-witnesses, clear fingerprints, and an unimpeachable confession, is denied due process if the jury is instructed that he can be found guilty by a preponderance of the evidence; that much is clear from *Winship*. Defendant B, against whom there is but one flimsy piece of evidence—which falls far short of sufficiency to prove guilt beyond a reasonable doubt but barely meets the "greater than zero" test of the no-evidence rule—is not denied due process so long as the instructions are proper. Clearly, however, defendant B is much more likely to be innocent than defendant A. That pair of results could well be thought to be at war with the purpose of the *Winship* decision—to reduce "the risk of convictions resting on factual error," to provide "concrete substance for the presumption of innocence," 397 U. S., at 363, and to ensure that "the moral force of the criminal law not be diluted by a standard of proof that leaves people in doubt whether innocent men are being condemned." *Id.*, at 364.

The approach I suggest would expand the contours of one kind of claim cognizable on federal habeas corpus. But if such an approach is constitutionally required, a federal habeas court asked to determine whether the evidence in a state prosecution was sufficient would be discharging the principal function underlying its jurisdiction—determining whether a defendant's custody is in violation of federal constitutional law. And the question whether a defendant has been convicted without sufficient evidence is hardly irrelevant to innocence. Cf. *Stone* v. *Powell*, 428 U. S. 465. Indeed, an affirmative answer to this question means not merely that a defendant *might have been,* but that he *was in fact* improperly convicted.[4]

---

[4] The burden that would be imposed on federal habeas courts by adoption of a sufficiency standard is not, of course, the critical inquiry in de-

On the evidence in this case as summarized in MR. JUSTICE MARSHALL's opinion, I think a rational jury could not have found beyond a reasonable doubt that the petitioner was in possession of the shotgun, as that offense is defined by the State—that he exercised, alone or jointly, ownership, possession, or control.[5] To address the question whether it violates the Due Process Clause of the Fourteenth Amendment for a state trier of fact to convict a defendant where the evidence cannot fairly be considered sufficient to establish guilt beyond a reasonable doubt, I would grant certiorari.

MR. JUSTICE MARSHALL, with whom MR. JUSTICE BRENNAN joins, dissenting.

Petitioner was convicted in the Circuit Court for Surry County, Va., of unlawfully possessing a sawed-off shotgun for an aggressive purpose. Va. Code. Ann. § 18.1–268.3 (Supp. 1971), now § 18.2–301 (1975). He received a mandatory minimum sentence of 10 years' imprisonment. After exhausting his state remedies, he filed this federal habeas corpus action. The District Court granted relief, but a divided Court of Appeals reversed.

The shotgun petitioner was convicted of possessing was

---

termining whether that standard is constitutionally required. I would note, however, that that burden is easily exaggerated. State courts would filter out most meritorious claims and in many cases would provide opinions thoroughly analyzing the question; few of the claims that remained would be likely to present difficult questions on the merits, and they could in any event be judged against the written record without the need for an evidentiary hearing.

[5] The jury instructions were not transcribed, but the record includes a typed instruction on possession, with the word "granted" written in ink at the bottom. That instruction defines "possession" as "single or joint ownership, possession, or control." Neither the Virginia Supreme Court in refusing to review the conviction, nor the respondent in his brief in opposition to certiorari, has questioned this definition of possession, and it appears to be consistent with Virginia law, cf. *Ritter* v. *Commonwealth*, 210 Va. 732, 741, 173 S. E. 2d 799, 805–806 (1970).

found in a leather case in the locked trunk of a car rented by one Coyle Persons. At the time the shotgun was found, the car was at a garage, having been towed there following an accident. The Commonwealth offered circumstantial evidence tending to prove that petitioner, along with three other Negro men, had been riding in the car at the time of the accident.[1] To link petitioner more directly to the shotgun in the trunk, the prosecution attempted to establish that two hours earlier these men had participated in a robbery, and that all but $700 of the proceeds of the robbery had been placed in the body and trunk of the car.[2] The robbery victim convincingly identified the money found in the car as having come from his store.[3] But the victim testified that only three robbers had entered the store, and he was unable to identify petitioner as one of them. It was undisputed that petitioner was not driving the car at the time of the accident.. The only evidence tying petitioner to the robbery, then, aside from his presence in the car with the proceeds two hours after the crime, came from a nurse who worked at the second hospital to which petitioner was taken

---

[1] The first witness at the scene of the accident testified that he saw three black men in one car, a white man and white woman in a second car, and a fourth black man on the ground. The Commonwealth all but ruled out the possibility that petitioner was the man on the ground by showing that the second witness at the scene administered first aid to a man on the ground at the same time that a state trooper was administering aid to petitioner.

[2] The shotgun apparently was not used in the robbery; an automatic pistol was used and such a pistol also was found in the trunk.

[3] The state trooper who searched the car testified that the had found a large number of coins, some of which were rolled in paper wrappers; some bills and bus tokens; an envelope with handwriting on it; two books of bus passes, one of which had two passes missing; and a cloth United States Mint bag. The victim of the robbery identified the envelope and Mint bag, and indicated that the rest of what was found closely corresponded with what was taken.

after the accident.[4]  She testified that she had found $600 in a pair of pants that she had been told belonged to petitioner.[5]

The petition for certiorari raises two issues.  First, petitioner contends that his conviction and confinement on the basis of the meager evidence produced at trial violates the Due Process Clause.  Second, petitioner claims that his Sixth Amendment right to confront his accusers was infringed by the admission of the nurse's testimony identifying the pants.  The Court of Appeals rejected petitioner's first contention without explanation, and did not reach the second.

I entertain grave doubts as to whether the Commonwealth produced any evidence, cf. *Thompson* v. *City of Louisville,* 362 U. S. 199 (1960), that petitioner possessed the shotgun.[6]  Even if the Commonwealth had conclusively proved that petitioner had robbed the store and had placed the proceeds in the trunk, this would not establish that petitioner had even seen the leather case or knew that it contained a shotgun, let alone that petitioner was exercising dominion or control over the shotgun.  The Court of Appeals' conclusory assertion to the contrary is hardly reassuring.

But if it were conceded that proof of petitioner's participation in the robbery whose proceeds were found in the trunk established petitioner's guilt of possession of the shotgun, then it is clear that the nurse's testimony identifying the pants with the $600 as petitioner's deprived petitioner of his

---

[4] All the victims were taken to the same hospital following the accident. Four or five of them were transferred to other hospitals within a few hours.

[5] The nurse also found a pair of ladies' gloves, two keys, and a piece of paper with an address on it in the pants pocket.

[6] At the same time, I find myself at least tentatively persuaded by MR. JUSTICE STEWART's argument that the Due Process Clause is violated by convictions not supported by evidence that can fairly be considered sufficient to establish guilt beyond a reasonable doubt.  I therefore agree that certiorari should be granted to decide this issue.

right of confrontation. The nurse was essentially repeating the statement of an anonymous declarant. That person was not subjected to cross-examination at trial or at the time the statement first was made. Cf. *California* v. *Green,* 399 U. S. 149, 153–168 (1970). The declarant was not even identified so that petitioner could have called him or her as a witness. Cf. *Dutton* v. *Evans,* 400 U. S. 74, 88 n. 19 (1970).[7] There were no indicia of reliability surrounding the out-of-court statement, cf. *Mancusi* v. *Stubbs,* 408 U. S. 204, 213–216 (1972); to the contrary, in the rush to get six injured persons to the hospital, and then to transfer them to at least three other hospitals, it is altogether possible that the unidentified declarant became confused as to which clothes belonged to which person. Finally, the out-of-court statement provided a far from "peripheral" link in tying petitioner to the robbery. Cf. *Dutton* v. *Evans, supra,* at 87–88. Thus, no matter how the Confrontation Clause is construed, compare *id.,* at 80–90 (plurality opinion of STEWART, J.), with *id.,* at 100–111 (MARSHALL, J., dissenting), it was violated in this case.

The Court of Appeals justified its decision not to determine whether petitioner's right of confrontation had been infringed on the ground that in any event there was some evidence of guilt. But that is entirely irrelevant. Once an independent constitutional error is established, the remaining question is not whether there is some evidence, but whether the evidence is such that the error was "harmless beyond a reasonable doubt." *Chapman* v. *California,* 386

---

[7] The ambulance attendant who transferred petitioner to the second hospital did testify that he had carried with him clothes that he believed belonged to petitioner, and had given them to a nurse. The attendant did not name the nurse, however, nor did he indicate what, if anything, he said to her. But even if the attendant were the source of the testimony identifying the pants, the Confrontation Clause problem would remain, since the attendant's testimony makes clear that he did not have firsthand knowledge as to the ownership of the clothes.

U. S. 18, 24 (1967). This the Court of Appeals failed to consider.

The Court's decision to deny certiorari is puzzling, to say the least. I can understand, if not agree with, the Court's apparent unwillingness to decide the relatively narrow question of whether the Court of Appeals correctly applied *Thompson* v. *City of Louisville, supra*. But I cannot comprehend the Court's refusal to consider the novel and important issue of constitutional law that MR. JUSTICE STEWART raises in his dissent. And I am positively baffled by the Court's failure to at least vacate the judgment of the Court of Appeals, and remand the case with instructions that it consider the Confrontation Clause issue on the merits as *Chapman* v. *California, supra*, requires. Cf. *Concerned Citizens* v. *Pine Creek Conservancy Dist., ante*, p. 651; *Moore* v. *United States, ante*, p. 20.

I respectfully dissent.