Cornell JONES, Petitioner-Appellant,

v.

E. P. PERINI, Superintendent,
Respondent-Appellee.

No. 78–3576.

United States Court of Appeals,
Sixth Circuit.

Argued April 11, 1979.

Decided May 23, 1979.

Richard L. Aynes, Akron, Ohio, for petitioner-appellant.

Cornell Jones, pro se.

William J. Brown, Atty. Gen. of Ohio, Criminal Activities Div., Richard David Drake, Asst. Atty. Gen., Columbus, Ohio, for respondent-appellee.

Before CELEBREZZE and ENGEL, Circuit Judges, and PECK, Senior Circuit Judge.

PER CURIAM.

Cornell Jones was convicted in the Ohio state courts of first degree murder in the shotgun killing of one Philip Underwood in the early morning hours of July 21, 1969. Seeking habeas corpus relief in the district court, Jones alleged that he was denied a speedy trial, in violation of his rights thereto under the Sixth and Fourteenth Amendments of the United States Constitution and in connection therewith, claimed that he was denied the equal protection of the laws under the Fourteenth Amendment by reason of Ohio statutes which permitted the adoption of different time requirements for bringing an arrestee to trial in different counties of the state, to his prejudice.

Finally, Jones asserts that the evidence upon which his conviction rested was so deficient as to meet the "no evidence" test of *Thompson v. City of Louisville*, 362 U.S. 199, 80 S.Ct. 624, 4 L.Ed.2d 654 (1960). In the alternative Jones urges that even if there was some evidence to support his conviction, the evidence was, as a matter of federal constitutional law, insufficient to

have permitted a jury to have found him guilty beyond a reasonable doubt as required under *In re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970), and that he was, therefore, denied the due process of law. In this appellant urges our court to adopt the dissenting view of Mr. Justice Stewart in *Freeman v. Zahradnick*, 429 U.S. 1111, 97 S.Ct. 1150, 51 L.Ed.2d 566 (1977), in which he urged that the "no evidence" test of *Thompson v. City of Louisville* should be discarded in favor of a test more consonant with the reasonable doubt standard of *Winship*. Appellant further notes that the matter is once more before the United States Supreme Court in *Jackson v. Virginia, cert. granted*, 439 U.S. 1001, 99 S.Ct. 609, 58 L.Ed.2d 676 (1978).

Upon a careful review of the record, the court is of the opinion that the several contentions of the appellant are without merit and that the trial judge did not err in denying habeas corpus relief.

■ The state adduced a strong, if circumstantial, case against petitioner at trial. The evidence showed that petitioner had borrowed $10 from one Barkley, the key prosecution witness, to continue wagering in a crap game, delivering his watch as security. After losing the money, Jones demanded his watch back and was restrained by the decedent Underwood from striking the lender with a chair. The testimony showed that petitioner was furious with decedent for his interference and left the apartment, stating his intention to return. Later that morning there was a loud demand for the decedent to come outside the apartment. Upon stepping out the back door, he was struck by a fatal shotgun blast to the waist. While no direct eyewitness evidence to the killing was introduced, the prosecution adduced the testimony of Barkley, who had witnessed the night's

events and who identified the voice as petitioner's. The witness indicated that the memory of petitioner's voice was fresh in his mind and that it had a distinctive quality.

While the asserted inconsistencies in the evidence alleged by petitioner were proper arguments to present to the jury, they do not eliminate the factual basis for the jury's finding of guilt, viewing the evidence in the light most favorable to the government. *Glasser v. United States*, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942). The court agrees with District Judge William K. Thomas that the evidence before the state court jury, although circumstantial, was fully adequate to support its verdict under either the test of *Thompson v. City of Louisville, supra*, or under the more demanding test urged by Justice Stewart's dissent in *Freeman v. Zahradnick, supra*. It would, therefore, serve no useful purpose to defer consideration further until *Jackson v. Virginia, supra*, is decided. Accordingly,

IT IS ORDERED that the judgment of the district court is affirmed.

PECK, Senior Circuit Judge, concurring in result.

I concur in the result reached by the majority opinion. The state prosecution established defendant's guilt as to the crime charged with evidence whose weight satisfies Fourteenth Amendment due process. There was a positive voice identification of defendant as the assailant, and there was eyewitness testimony that defendant had fought with the victim during a crap game brawl approximately one-half hour prior to his murder. The conflicting eyewitness testimony of Clarence Edwards required the jury to assess the credibility of the witnesses, and the jury chose to resolve the conflict in favor of the government.[1] Of course, it

1. During the hours just prior to the murder, Cleophus Barkley and Clarence Edwards were playing crap with the decedent and a "fourth party." Eventually this "fourth party" became involved in a fight with Barkley, and the decedent intervened on Barkley's behalf. At trial, Barkley testified that the "fourth party" at the crap game was defendant. In direct conflict to

this testimony, Edwards testified that the "fourth party" at the game was not defendant, but was a friend of Edwards named Jackie whom he had known since 1958. Barkley's testimony, if believed, established defendant's motive for the murder and his close proximity to the scene of the crime.

is hornbook law that resolution of credibility questions lies squarely within the province of the jury.

I have chosen to file a separate opinion in this case because I believe the majority opinion fails to squarely address the standard that governs evidentiary review in habeas corpus proceedings. The prevailing standard for such review is the so-called "no evidence" standard, first set forth by the Supreme Court in *Thompson v. City of Louisville,* 362 U.S. 199, 80 S.Ct. 624, 4 L.Ed.2d 654 (1960). As noted by the majority opinion herein, the Supreme Court has recently granted a writ of certiorari in *Jackson v. Virginia,* 439 U.S. 1001, 99 S.Ct. 609, 58 L.Ed.2d 676, in order to decide if its decision in *In re Winship,* 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970), has either overruled or modified the *Thompson* standard. In my opinion, the majority today has used the Supreme Court's grant of certiorari in the *Jackson* case to sidestep the dilemma presently posed by the "no evidence" standard. Such course is inappropriate for two reasons. First, although in the future the Supreme Court may decide to depart from the *Thompson* standard, at the present time that standard, and that standard alone, controls federal court review of state trial records. Second, even if one chooses to engage in speculation on what the Supreme Court will decide in the future, it is certainly possible that the Court will do no more than simply affirm the *Thompson* standard in the coming months. In short, this Court, as well as every federal court, is currently obligated to directly confront the "no evidence" standard and to explicitly define its impact on a state prisoner's right to habeas corpus relief.

At times the federal courts have denied prisoners writs of habeas corpus, espousing a literal interpretation of the "no evidence" standard. These courts have concluded in essence that a state satisfies the requirements of the Fourteenth Amendment whenever it presents any "iota" or "scintilla" of evidence that tends to establish the prisoner's guilt. *See, e. g., Brooks v. Rose,* 520 F.2d 775, 777 (6th Cir. 1975). Such literal interpretation of the *Thompson* decision so minimizes the scope of habeas corpus review that, in practical terms, it eliminates the very function of such review. In virtually every criminal case that proceeds to trial, the state presents some evidence that renders the guilt of the accused more plausible than not. Furthermore, a literal interpretation of the *Thompson* decision is no longer consistent with the interpretation given that decision by the Supreme Court in subsequent cases. *See, e. g., Vachon v. New Hampshire,* 414 U.S. 478, 94 S.Ct. 664, 38 L.Ed.2d 666 (1974); *Johnson v. Florida,* 391 U.S. 596, 88 S.Ct. 1713, 20 L.Ed.2d 838 (1968) (per curiam).

It is time for the federal courts to forthrightly recognize that habeas corpus review of evidentiary records now comprehends some notion of the degree or the weight of the evidence. Although admittedly the weight required by the *Thompson* standard is not as great as the weight required, for example, by the "sufficiency of evidence" standard of direct review,[2] a federal court should not conclude its consideration whenever it finds "any" evidence of guilt in a state trial record. Rather, a federal court's obligation requires that it review such trial record in order to insure that the state has presented evidence of adequate weight to satisfy constitutional due process. The Supreme Court has implicitly weighed evidence in cases such as *Vachon, supra,* and *Johnson, supra.* The Fourteenth Amendment requires no less.

In summary, I agree with the majority conclusion that the evidence contained in the record now before us meets constitutional requirements either under the *Thompson* "no evidence" standard or under the "sufficiency of evidence" standard of direct review. I conclude, however, that it is time for this Court to clearly state that each of these standards of review takes into account the weight of the evidence.

2. *See, e. g., United States v. Green,* 548 F.2d 1261 (6th Cir. 1977).