**Ricardo MORENO, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 763–86.

Court of Criminal Appeals of Texas,
En Banc.

June 29, 1988.

Robert G. Turner, Houston, for appellant.

John B. Holmes, Jr., Dist. Atty. and Timothy G. Taft, Asst. Dist. Atty., Houston, Robert Huttash, State's Atty., Austin, for the State.

## OPINION ON STATE'S PETITION FOR DISCRETIONARY REVIEW

WHITE, Judge.

Appeal is taken from a conviction for attempted capital murder of a peace officer. After finding appellant guilty, the jury assessed punishment at twenty-three years imprisonment.

The Fourteenth Court of Appeals, in a published panel opinion, reversed the conviction on five separate issues. *Moreno v. State*, 711 S.W.2d 382 (Tex.App.—Houston [14th Dist.] 1986). We granted the State's petition to review each of these and, after having done so, will reverse the judgment of the Court of Appeals as to the sufficiency of the evidence and affirm as to the remaining issues.

The State, in three grounds for review, attacks the Court of Appeals' determination that the evidence was insufficient to sustain the verdict. Specifically, in its first ground, the State asserts the evidence was sufficient to prove that the knife was a deadly weapon, in its second, that the evidence was sufficient to prove appellant's intent to commit murder and, in its fourth, the State asserts a general attack on the

court's sufficiency analysis. We agree with each of the State's contentions and because they all refer to the sufficiency issue will address them collectively.

At the outset, we emphasize that the proper standard of review is that announced in *Jackson v. Virginia:* that the evidence must be viewed in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *In re Winship,* 397 U.S. 358, 365, 90 S.Ct. 1068, 1073, 25 L.Ed.2d 368 (1970); *Carlsen v. State,* 654 S.W.2d 444, 448–449 (Tex.Cr. App.1983) (Opinion on State's Motion for Rehearing); *Combs v. State,* 643 S.W.2d 709, 716–717 (Tex.Cr.App.1982). This rule is by now axiomatic as well as committed to the memories of most. However, the drawback of such axiomatic law is that it becomes a rule which is often cited yet rarely seriously considered—a habit the State appropriately terms "lip service." Thus, it becomes necessary to quote, once again, the language from *Jackson* explicating this standard,

> [T]he critical inquiry on review of the sufficiency of the evidence to support a criminal conviction must not be simply to determine whether the jury was properly instructed, but to determine whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt. [footnote omitted]. But this inquiry does not require a court to 'ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.' [citation omitted]. Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. [citation omitted].

*Jackson, supra* 443 U.S. at 318–319, 99 S.Ct. at 2788–2789.

■ Under the *Jackson* standard, the reviewing court is not to position itself as a thirteenth juror in assessing the evidence. Rather, it is to position itself as a final, due process safeguard ensuring only the rationality of the factfinder. The court is never to make its own myopic determination of guilt from reading the cold record. It is not the reviewing court's duty to disregard, realign or weigh evidence. This the factfinder has already done. The factfinder, best positioned to consider all the evidence firsthand, viewing the valuable and significant demeanor and expression of the witnesses, has reached a verdict beyond a reasonable doubt.[1] Such a verdict must stand unless it is found to be irrational or unsupported by more than a "mere modicum" of the evidence, with such evidence being viewed under the *Jackson* light. Concrete application of the *Jackson* standard is made by resolving inconsistencies in the testimony in favor of the verdict. The court is to review the evidence as it is already weighted by the jury's verdict to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson, supra* at 319–320, 99 S.Ct. at 2789–2790; *Carlsen, supra* at 448–449; *Combs, supra* at 716.

It is with this proper standard of review in mind that we now proceed to address the sufficiency issue. The relevant facts follow. At approximately 3:30 p.m. on July 10, 1984, Officer Salazar of the Houston Police Department was called to an apartment complex for an unrelated matter. While at the complex, the officer's attention was directed toward another disturbance, across the street from the complex,

---

1. The reasonable doubt standard itself aids in ensuring the due process evidentiary sufficiency requirement. As noted in *Winship, supra,* "[t]he reasonable-doubt standard plays a vital role in the American scheme of criminal procedure. It is a prime instrument for reducing risk of convictions resting on factual error. The standard provides concrete substance for the presump-

tion of innocence...." *In re Winship, supra* 397 U.S. at 363, 90 S.Ct. at 1072, and Harlan, J., concurring opinion at 371–373, 90 S.Ct. at 1076–1077. Thus, the trier of fact, when reaching a verdict, has already provided a constitutionally safeguarded determination of guilt which is properly subject to deferential rather than de novo review.

involving appellant, who was intoxicated and brandishing a large hunting knife.[2] As the officer approached, appellant began coming toward him with the knife. The officer, upon seeing appellant coming at him, stopped and began backing away and ordering appellant, in both Spanish and English, to drop the knife. Appellant shouted "Mata Me!" (Spanish for "Kill Me"!), continued his advance and refused to drop the knife. The officer, while backing away, dropped his clipboard and nightstick in order to draw his service revolver and radio for backup officers.

Appellant, undaunted by the officer's gun and repeated orders to drop the knife, continued to force the officer back for a total of thirty to forty feet, slowly narrowing the distance between the two. Throughout this two to three minute timespan the officer continually ordered appellant to drop the knife and appellant responded with statements like "no, you will have to kill me first" and "shoot me in front of all these people."

When appellant came within four feet from the officer, he lunged out with the knife directed at the officer's midsection. The officer jumped back to avoid being stabbed and shot appellant once in the hand. Appellant halted a moment and then lunged at the officer again with the knife. The officer then shot appellant a second time in the stomach. Appellant fell to the ground still clinching the knife and a by-stander stepped on his hand, trying to remove the knife. Appellant broke free and stood up again attempting to get to the officer but only had enough energy to wave the knife in the air, take a few more steps and collapse.

The officer testified that he was in fear for his life, and numerous bystanders testified that they thought the officer was in life threatening danger. Appellant, testifying in his own behalf, stated that he had been drinking since 9:30 that morning and did not remember anything until waking up in the hospital.

The Court of Appeals found this evidence insufficient to prove an intent to commit murder. It approached the sufficiency question from the standpoint that murderous intent can be presumed from the use of a deadly weapon per se. Because a knife is not a deadly weapon per se, the court reasoned, its manner of use determines whether it is a deadly weapon. The court, utilizing circuitous reasoning, then concluded that because the knife was not used in a manner which evidences an intent to murder, it was not a deadly weapon, thus, the evidence was insufficient to prove an intent to murder. We disagree with both the analysis used and conclusion reached.

▬▬ The Court of Appeals is correct only in that specific intent to kill may be inferred from the use of a deadly weapon per se,[3] *Flanagan v. State*, 675 S.W.2d 734,

---

2. Although neither the knife itself nor its exact size, in inches, is contained in the record, the actual knife was admitted into evidence and viewed by the jury. The knife was uncontrovertedly described as a large, bowie-like hunting knife approximately ten inches in length and clearly capable of causing death. The jury returned an affirmative finding of a deadly weapon which is not challenged on appeal.

3. Although the appellate presumption has now been more appropriately termed "permissible inference," it still has continued validity as a vehicle of appellant review and can also be used by trial judges in determining questions involving sufficiency of evidence. *See, Hardesty v. State*, 656 S.W.2d 73, 76–78 (Tex.Cr.App.1983).

At trial, the defendant's use of a deadly weapon per se is only a circumstance indicating guilt from which the jury may or may not infer an intent to kill. It is neither conclusive nor burden shifting. As held in *Harrell v. State*, 659 S.W.2d 825 (Tex.Cr.App.1983), a presumption cannot work to automatically refute testimony resulting in a denial of a charge on a lesser included offense. *Harrell, supra* at 827. Analogous to the now abandoned presumptions of theft intent from nighttime entry and guilt of theft from recent unexplained possession of stolen property, the instant presumption, when used at trial, would constitute an impermissible comment on the weight of the evidence and threaten a myriad of constitutional protections. *See, LaPoint v. State*, No. 227–86 (Tex.Cr.App., delivered May 4, 1988); *Browning v. State*, 720 S.W.2d 504, 506–507 (Tex.Cr.App.1986); also see Teague, J., concurring and dissenting at 508–510; *Hardesty, supra* at 76–78.

On the other hand, these permissible inferences, when used at the appellate level, are appropriate vehicles of appellate review. The evidence, when viewed in the light most favorable to the verdict, shows that the use of a deadly weapon per se constitutes more than a 'mere

744 (Tex.Cr.App.1984) (Opinion on Rehearing), and that, although a knife is not a deadly weapon per se, it can qualify as such through the manner of its intended use. V.T.C.A., Penal Code Sec. 1.07(a)(11)(B); *Tisdale v. State*, 686 S.W.2d 110 (Tex.Cr.App.1984) (Opinion on State's Motion for Rehearing). The utility and logic of the rule that, in the appropriate context, murderous intent can be inferred from the use of a deadly weapon per se is self-evident. It is simply a means to provide due deference to the jury's determination of guilt. However, expansion of this rule to include such an inference where the weapon is not deadly per se, but where its manner of use exhibits an intent to kill, represents tautological reasoning. An inference in the latter case is superfluous.

When a defendant uses a weapon in such a manner that an intent to kill is exhibited, then an intent to kill can be directly concluded. It is unnecessary to take an extra step to determine whether the weapon is now a deadly weapon in order to infer an intent to kill. The very fact that a weapon was used in a deadly manner answers the question. *See, e.g., Windham v. State*, 162 Tex.Cr.R. 620, 288 S.W.2d 90, 92 (1956); *Hatton v. State*, 31 Tex.Cr.R. 586, 21 S.W. 679 (1893). Thus, our sufficiency review will focus on the relevant inference of appellant's intent from his acts, words and deeds, given the attendant circumstances, and dispense with the superfluous consideration of whether the knife can actually be defined as a deadly weapon.[4]

■ The jury was charged on the lesser included offense of aggravated assault but chose to disregard such in order to convict appellant of attempted capital murder. Appellant's continuous encroachment on the officer, the threatening manner in which he brandished the knife, which was uncontrovertedly capable of causing death, his tenacious refusal to drop the knife and his final

strikes out at the officer even after being shot, constitute sufficient evidence to support the jury's verdict.

The Court of Appeals' blanket conclusion that there was "no testimony that appellant at any time threatened to cause ... death to the officer" is absolutely contrary to the evidence, especially when it is viewed in the light most favorable to the verdict. Such a statement perfectly exemplifies an impermissible realignment and disregardance of evidence by the reviewing court as was warned against at the outset of this opinion. *See,* pp. 870–71, *post.* The single fact that appellant encroached on the officer with the knife in a readied position constitutes *some* evidence from which a jury could conclude a threat. Contrary to the Court of Appeals' conclusion, the fact that appellant was screaming "Kill Me!" does not necessarily evidence a bizarre suicide attempt where appellant only intended to be killed. Rather, such a threat can more reasonably be interpreted as an invitation for a standoff with the officer. In any case, this factual determination was best left to the jury who heard all the testimony first hand and interpreted it accordingly.

Further, the fact that appellant did not actually cause physical harm to the officer does not negate an intent to kill. *See, Godsey v. State*, 719 S.W.2d 578, 583 (Tex. Cr.App.1986); 54 A.L.R.3d 612. The fortunate fact that the officer successfully took defensive action cannot negate a deadly intent. It would be a dismal day for victims when this Court required actual harm to occur before a defendant's murderous intent could be inferred. *See, Flanagan, supra* at 744–745; *Hatton, supra* 21 S.W. at 679. On the other hand, the mere carrying of a knife cannot prove an intent to kill. *See, Godsey, supra* at 581–583. Rather, the totality of the evidence must fall some-

modicum' of evidence of an intent to kill. Thus, the inference simply works as a logical assumption that the jury made such a reasonable inference in reaching its verdict.

4. A different issue is presented when a challenge is being directly asserted against the sufficiency of the evidence to support an affirmative

finding of a deadly weapon. *See, e.g., Tisdale, supra* at 113–117. In this context, the sufficiency analysis should directly focus on whether the weapon, in its manner of use or intended use, qualified as a deadly weapon. In the instant case, such a direct attack on the affirmative finding was not raised.

where between these two extremes, as it does in the instant case.

Viewing the evidence in the light most favorable to the verdict, we find that a rational jury could have found that appellant had the requisite intent to kill. The State's first, second and fourth grounds for review are sustained.

■ In its third ground for review, the State collectively challenges the court's disposition of the remaining issues by asserting that error in each ground was not properly preserved. Contrary to the State's assertion, we find that appellant's second point of error in the Court of Appeals, which they sustained, was properly preserved. The State, attempting to impeach appellant with prior unadjudicated bad acts, began cross-examining him concerning his action of previously firing guns[5] within his apartment complex. Appellant had not been charged, much less convicted, of these collateral offenses. Appellant's objection, "Judge, I object to this line of questioning. This is going to other acts that are irrelevant to this matter," was timely, comported with his objection on appeal and was sufficiently specific to apprise the trial court of his objection. *Zillender v. State*, 557 S.W.2d 515 (Tex.Cr.App.1977).

Because we find one of the points of error of which the Court of Appeals reversed the case to have been proper, we do not need to reach the State's remaining contentions since such would have no effect on the disposition of this appeal. The State's third ground for review is overruled.

The judgment of the Court of Appeals as to the sufficiency of the evidence is reversed and the cause remanded to the trial court for proceedings not inconsistent with this opinion.

CLINTON, Judge, concurring.

At page 867 of its opinion the Court discusses "the proper standard of review" announced in *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), and also excerpts the most familiar passage "explicating this standard." However, in page 867 the Court interprets that passage so as to present a litany of "dos and don'ts" that so far as I can determine has not appeared in any prior opinion of this Court. For that reason, if no other, the import of that interpretation becomes even more significant.[1] Thus this effort to reprise the theme of *Jackson v. Virgina.*[2]

Because the Constitution of the United States (as well as of this State) prohibits a criminal conviction except upon proof of guilt beyond a reasonable doubt, in *Jackson v. Virginia* the Supreme Court granted certiorari to consider the claim that under *In re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970), a federal habeas court must determine "not whether there was *any* evidence to support a state-court conviction, but whether there was sufficient evidence to justify a rational trier of the facts to find guilt beyond a reasonable doubt." *Id.*, 443 U.S., at 312–313, 99 S.Ct., at 2785.[3]

In addition to the *Jackson v. Virginia* standard excerpted by Judge White in the

---

**5.** The appellant was charged with using a knife. Any prior activity with a gun was never mentioned until the State's prosecutor started questioning about the matter.

**1.** While *Jackson v. Virginia* sets a standard for review by federal habeas courts of sufficiency of evidence in state convictions, this Court has held that same standard applicable for appellate review for evidentiary sufficiency in Texas. *Carlsen v. State*, 654 S.W.2d 444 (Tex.Cr.App. 1983) (Opinion on Rehearing, at 449–450); *Freeman v. State*, 654 S.W.2d 450 (Tex.Cr.App.1983) (Opinion on Rehearing, at 456–457); *Denby v. State*, 654 S.W.2d 457 (Tex.Cr.App.1983) (Opinion on Rehearing at 463–464); *Wilson v. State*,

654 S.W.2d 465 (Tex.Cr.App.1983) (Opinion on Rehearing, at 471–472).

**2.** Justice Stewart did not write on a clean slate. The genesis of the principal thesis in *Jackson v. Virginia* is his dissenting opinion in *Freeman v. Zahradnick*, 429 U.S. 1111, 97 S.Ct. 1150, 51 L.Ed.2d 566 (1977). His intendment in the majority opinion may also be gleaned from expressed views of Justice Stevens who, joined by The Chief Justice and Justice Rehnquist, concurred in the *Jackson v. Virginia* judgment.

**3.** Emphasis by Justice Stewart; all other emphasis throughout is supplied by the writer of this opinion unless otherwise indicated.

opinion of the Court here, the Supreme Court explained:

"Once a defendant has been found guilty of the crime charged, the factfinder's role as weigher of the evidence is preserved through a legal conclusion that upon judicial review *all of the evidence* is to be considered in the light most favorable to the prosecution. [note omitted] The criterion thus impinges upon 'jury' discretion only to the extent necessary to guarantee the fundamental protection of due process of law.[13]

13. The question whether the evidence is constitutionally sufficient is of course wholly unrelated to the question of how rationally the verdict was actually reached. Just as the standard announced today does not permit a court to make its own subjective determination of guilt or innocence, it does not require scrutiny of the reasoning process actually used by the factfinder—if known. [citation omitted]."

*Id.,* at 319, 99 S.Ct., at 2789 (emphasis by Justice Stewart).

By way of demonstrating a need for the new standard and that the "no evidence" rule of *Thompson v. Louisville* 362 U.S. 199, 80 S.Ct. 624, 4 L.Ed.2d 654 (1960), is "inadequate to protect against misapplications of the constitutional standard of reasonable doubt," the Supreme Court noted an earlier expression of the notion that "a mere modicum of evidence may satisfy a 'no evidence' standard," pointed out that "any evidence that is relevant [under Fed. Rule Evid. 401] could be deemed a 'modicum,' [b]ut it could not seriously be argued that such a 'modicum' of evidence could by itself rationally support a conviction beyond a reasonable doubt." *Id.,* 443 U.S., at 310–320, 99 S.Ct., at 2789.[4]

Justice Stevens, contending that the "logic" of *In re Winship* would require a reviewing court to "ask itself whether *it* believes that the evidence at trial established guilt beyond a reasonable doubt," 443 U.S., at 334, 99 S.Ct., at 2797 (emphasis by Justice Stevens), points out, "The Court, however, rejects this standard, *as well as*

4. In note 14, 99 S.Ct., at 2790, Justice Stewart gives examples of "absurdly unjust results" the *Thompson v. Louisville* rule would produce, one which is that "a defendant against whom there was but one slender bit of evidence would not

*others that might be consistent with Winship,"* and gives examples, *viz:*

"For example, it does not require the reviewing court to view *just the evidence most favorable to the prosecution* and then to decide whether *that evidence* convinced it beyond a reasonable doubt, nor whether, based on the entire record, rational triers of fact could be convinced of guilt beyond a reasonable doubt..... It seems to me that if 'logic' allows this choice [of the standard announced by the majority] after *Winship* it should also allow the presumption that the Court has *rejected*—that trial judges and juries will act rationally and honestly in applying the reasonable doubt standard, at least as long as the trial is free of procedural error and the record contains evidence tending to prove each of the elements of the offense."

*Id.,* at 334–335, 99 S.Ct., at 2797.

This Court reviewed the teachings of *Jackson v. Virginia* in a series of opinions in the *Carlsen* line of cases cited *ante,* at note 2, and learned the same lesson as Justice Stevens. In each we found, *inter alia:*

"Moreover, scrutiny of the analysis suggested in the motion for rehearing (that the focus of our inquiry should be on 'any evidence which could rationally support the verdict') reveals it to be functionally indistinguishable from that specifically rejected by the Supreme Court in *Jackson,* supra, as violative of the Fourteenth Amendment."

*Carlsen,* supra, at 449; *Freeman,* supra, at 456; *Denby,* supra, at 464; *Wilson,* supra, at 472.

In this cause, in support of its discussion in page 867 of its opinion, the Court cites *Jackson v. Virginia,* supra, 443 U.S., at 319–320, 99 S.Ct., at 2789–2790; *Carlsen,* supra, at 448–449; *Combs v. State,* 643 S.W.2d 709, 716 (Tex.Cr.App.1982). Therein lies an inconsistency.

be denied due process so long as the jury has been properly instructed on the prosecutor's burden of proof beyond a reasonable doubt." See also *Freeman v. Zahradnick,* supra, 97 S.Ct., at 1152 for similar "bizarre results."

*Combs v. State,* supra, examined the appropriate standard for appellate review in criminal cases. After pointing out that this Court does not have jurisdiction to pass on "weight and preponderance of evidence," but instead it "views the evidence in the light most favorable to the verdict," the Court cited a host of cases to that effect, and then quoted a passage directly from *Banks v. State,* 510 S.W.2d 592, 595 (Tex. Cr.App.1974). *Combs,* at 716.

*Banks,* supra, of course, was decided before *Jackson v. Virginia.* At page 595 Justice Cornelius iterated what the cases were then saying about reviewing sufficiency of evidence, *viz:*

"... In reviewing the sufficiency of the evidence to support the conviction, we must view the evidence in the light most favorable to the verdict. In doing so, the verdict will be sustained *if there is any evidence which, if believed, shows the guilt of the accused.* [citations omitted]."

So *Combs* thus approved *Banks* and that "the verdict will be sustained if there is any evidence which, if believed, shows the guilt of the accused." Indeed, it rephrased the test, *viz:*

"If there is any evidence that establishes guilt beyond a reasonable doubt, and if the trier of facts believes that evidence, we are not in a position to reverse the judgment on sufficiency of the evidence grounds."

*Id.,* at 716.

I do not pretend to comprehend the meaning of all that the Court says in page 867. But, because *Jackson v. Virginia rejected* the notion that "*any evidence which, if believed, shows the guilt of the accused*" is sufficient to sustain a verdict of guilty, that the Court would cite *Combs,* and by extension *Banks,* makes its comments even more puzzling. Surely the Court is not attempting to read the *Combs/Banks* formulation into the standard of review announced in *Jackson v.*

*Virginia* several years after *Banks* and its cited cases were decided, or to indicate that iteration of *Banks* by *Combs* in a different context somehow restored vitality to *Banks,* and makes it applicable today.

Understanding that the Court must have something else in mind, and because I agree that under *Jackson v. Virginia* any rational trier of fact could have found the requisite element of intent for this offense beyond a reasonable doubt, I join the judgment of the Court.[5]

DUNCAN, J., joins this opinion.

TEAGUE, Judge, dissenting and concurring.

The facts of this cause make it clear to me that the day in question was a "dismal" day for Ricardo Moreno, henceforth appellant. The facts reflect that appellant, who was then highly intoxicated, was shot once in the hand and once in the stomach by the complainant, a Houston police officer, who was a much larger man than appellant, who is only four feet, six inches tall. Given what the majority opinion states, or perhaps does not state, it should also be a "dismal" day for the Courts of Appeals of this State, if not the criminal jurisprudence of this State.

A majority of this Court, operating from its perch, in its de novo review of the facts of this cause, that go to appellant's claim that the State's evidence is insufficient to sustain his conviction for attempted capital murder of the complainant, a Houston peace officer, finds that the evidence is sufficient.

The Fourteenth Court of Appeals (Houston), however, from its perch, in a unanimous opinion by Justice Ross Sears, on behalf of himself, Justice Paul Presslar, and Justice Bill Cannon, for that court, held to the contrary, after carefully reviewing the facts of the case.

Does this mean that the collective judgment of a majority of the members of this

---

5. If I believed the Houston (14th) Court of Appeals did indeed exercise its constitutional authority under Article V, § 6, I would entertain consideration of the thrust of Judge Teague's

separate opinion. See, e.g., my dissenting opinion in *Hill v. State,* 719 S.W.2d 199, 202 (Tex.Cr. App.1986).

Court who vote to join the majority opinion is superior to the collective judgment of Justices Sears, Presslar, and Cannon? Under the "gorilla" theory, the answer is, of course, an unequivocal yes. However, by virtue of Art. V, § 6, of the Texas Constitution, the voters of this State have declared that the judgments of the members of this Court, when it comes to making factual determinations, are inferior to the members of the Courts of Appeals.

Implicit in the opinion of the court of appeals is that in making the determination whether the evidence was sufficient it "weighed" the evidence, obviously doing so pursuant to the provisions of Art. V, § 6, of the Texas Constitution, which provides, inter alia, that decisions of the courts of appeals shall be conclusive on all questions of fact, subject to no review by this Court. In this regard, please observe that in finding that the evidence was insufficient the court of appeals did not order the trial judge to enter a judgment of acquittal as to the offense of attempted capital murder on appellant's behalf; it merely ordered that "The conviction of appellant is reversed and this cause is remanded to the trial court [for proceedings not inconsistent with this opinion]." *Moreno v. State*, 711 S.W.2d 382, 386 (Tex.App.–14th 1986). Thus, the court of appeals did not find that there was "no evidence" to support the conviction, only that by weighing the facts the evidence was insufficient.

The majority opinion, implicitly if not expressly, asserts that in ordering the conviction for attempted capital murder set aside, the court of appeals acted as "the almighty thirteenth juror" in this cause. To the contrary, however, it did not act or attempt to act as the almighty thirteenth juror might have acted when it reviewed the claim that the evidence was insufficient; it acted as a court of appeals is authorized to act pursuant to Art. V, § 6, of the Texas Constitution.

The issues that confront this Court in this cause is whether the court of appeals had jurisdiction, pursuant to Art. V, § 6, of the Texas Constitution, to pass upon the weight and preponderance of the evidence, and how binding that decision might be on this Court. Those issues remain unresolved. Perhaps a more important issue that should be addressed by this Court is whether this Court's decision of *Combs v. State*, 643 S.W.2d 709 (Tex.Cr.App.1982), where this Court's train got off the track in deciding what jurisdiction the courts of appeals have in deciding factual issues, and what jurisdiction this Court has to review sufficiency questions once they have been passed on by the Courts of Appeals, should be revisited by this Court.

In urging the members of this Court that *Combs*, supra, should be revisited, and trying to persuade them to see the guiding light, I can do little more than refer them to the dissenting opinion that I filed in *Gold v. State*, 736 S.W.2d 685, 691 (Tex.Cr. App.1987), which I strongly urge them to read, if they have not done so, or re-read if they would care to understand my repeat of the concerns expressed by Justice Colley of the Tyler Court of Appeals. I pause to point out that members of the El Paso Court of Appeals and the Corpus Christi Court of Appeals have also voiced the same concerns that Justice Colley has expressed about the Constitutional authority that courts of Appeals have in reviewing factual issues, and how binding those decisions should be in this court.

In sum, the court of appeals did not act as a "thirteenth" juror, and the majority opinion errs in implying that it acted in that capacity, because all that the members of the court of appeals did in this cause was to act in accordance with their oaths of office.

For all of the above and foregoing reasons, I respectfully dissent to this Court implicitly overruling that part of Art. V, § 6, of the Texas Constitution, which provides that decisions of the Courts of Appeals "shall be conclusive on all questions of fact brought before them." I do, however, join the remainder of the opinion that holds that appellant properly preserved his second point of error for appellate review purposes.