TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN








NO. 03-93-00509-CR








Charles Osborn, Appellant




v.




The State of Texas, Appellee








FROM THE DISTRICT COURT OF TRAVIS COUNTY, 299TH JUDICIAL DISTRICT


NO. 0921667, HONORABLE WENDELL ODOM, JUDGE PRESIDING








 Appellant Charles Osborn waived a jury trial and was convicted in a bench trial of
the offense of indecency with a child. Act of May 29, 1987, 70th Leg., R.S., ch. 1028, § 1, 1987
Tex. Gen. Laws 3474 (Tex. Penal Code Ann. § 21.11, since amended). The trial court assessed
punishment at incarceration for ten years. Appellant's sole point of error asserts that the evidence
is not sufficient to prove beyond a reasonable doubt that appellant committed the alleged acts with
the intent and for the purpose of sexual gratification, a necessary element of the alleged offense. 
We will affirm the judgment.

 The State alleged that appellant, with the intent to arouse and gratify his sexual
desire, intentionally and knowingly engaged in sexual contact by touching the genitals of the male
victim, a child younger than seventeen years of age and not his spouse. An essential element of
this offense is the intent to arouse and gratify the sexual desire of any person. Duwe v. State, 642
S.W.2d 804 (Tex. Crim. App. 1982). In reviewing the legal sufficiency of the evidence, the
relevant question is whether, after reviewing the evidence in the light most favorable to the State,
any rational trier of fact could have found the essential elements of the criminal offense beyond
a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319 (1979); Moreno v. State, 755 S.W.2d
866, 867 (Tex. Crim. App. 1988). The requisite specific intent to arouse or gratify the sexual
desire of any person can be inferred from the defendant's conduct, his remarks, and all of the
circumstances. McKenzie v. State, 617 S.W.2d 211, 216 (Tex. Crim. App. 1981); Bowles v.
State, 550 S.W.2d 84, 85 (Tex. Crim. App. 1977); Branson v. State, 825 S.W.2d 162, 167 (Tex.
App.--Dallas 1992, no pet.). Evidence that an accused told the victim not to tell or that he would
hurt the victim will support an inference that the accused knew that what he was doing was wrong
and punishable. Branson, 825 S.W.2d at 167-68; Shane v. State, 685 S.W.2d 89, 90-91 (Tex.
App.--Beaumont 1984, no pet.); see Bowles, 550 S.W.2d at 85.

 Appellant and the family of the victim became acquainted at the church they
regularly attended. Appellant and the victim were friends, and the victim's father and appellant
had considered a business association. The fourteen-year-old victim and his fifteen-year-old
brother participated with the thirty-two-year-old appellant in activities such as bowling.

 In the early Saturday evening of the night that the alleged offense occurred, the
boys were at appellant's apartment. They were watching television while awaiting an opening at
the bowling alley that appellant had reserved. On the way to the bowling alley while in 
appellant's car, appellant offered to bet the victim one hundred dollars that the victim "didn't have
any hair on [his] balls." They entered into the bet, and appellant said they would check and see
as soon as they returned to his apartment. When they left the bowling alley, they went into the
alley behind the bowling alley to throw away some trash. At this time, appellant suggested they
settle their bet, but the victim refused.

 On the way back to the apartment, appellant stopped and bought a twelve-pack of
beer. At appellant's apartment, all three went into the bathroom "to check and see if the bet was
right." The victim pulled down his pants. Appellant "checked and he said: `You ain't got hair
on your balls. It's on your scrotum.'" Appellant grabbed the victim's "balls and checked
himself." Appellant held the victim's scrotum and testicles for about "twenty seconds." The
victim testified that appellant said, "No, I lost. He said he won. So, nobody got any money at
all." The victim thought he had been tricked.

 The boys and appellant then went into the living room and started to play poker. 
Appellant suggested: "Let's play strip poker." The victim's brother and appellant lost a game
and both removed their clothes. The victim was last to lose a game, and he did not want to take
off his clothes. The appellant told him that if he didn't take his clothes off, the victim's brother
and he would "assist" him in doing so. The victim eventually removed his clothes.

 With their clothes off, the three continued to play poker, and the appellant gave the
boys beer to drink. The victim drank several beers and became "drunk" and "sick." When the
victim said he needed to go to the bathroom, appellant went with him.



Q. What happened when you got into the bathroom?


A. I just stood there. I was so drunk I couldn't do nothing so he just started
fondling me and doing it for himself. Doing it by himself.


Q. Tell me what you mean by that.


A. He was grabbing me all over and saying, "I'll help you."


Q. When you say he was grabbing you all over, was he touching you on your
genitals?


A. Yes.


Q. Did he hold your penis --


A. Yes.


Q. -- in his hand: Okay. What happened after that?


A. Well, we went back in the living room and I puked on myself and he said that
we would go in there and he would put me in the shower so I could clean
myself off.


Q. Did you have any clothes on at this time when you threw up?


A. No. Well, I did when I went in there but I didn't because he assisted in taking
all of my clothes off for me.


Q. You went back into the living room. You said you got sick, you threw up?


A. Yeah.


Q. Did you have any clothes on when you threw up?


A. Yeah. I did.


Q. Did you throw up on your clothes?


A. Yeah. And in my shoes.


Q. So, Charles was going to help you --


A. Yeah.


Q. -- clean up?


A. Uh-huh.


Q. So, he goes back into the bathroom with you, right?


A. Yeah.


Q. What happens when you get back into the bathroom with Charles?


A. Well, I thought that I was just going to take all of my clothes off and get in
and he was going to walk out. But he just put a tub of water in there and just
started scrubbing me down for me.


Q. When you say he started scrubbing you down, what part of your body was he
scrubbing?


A. Mostly on my genitals.


Q. Okay. Was he using any soap?


A. No. He wasn't using anything.


Q. What was he using?


A. Just his hands.



 The victim testified that after his bath, appellant dried him off and put underwear
on him. The victim then watched television until he fell asleep because he "was so drunk." In
the morning when he awoke, the victim testified he was naked and in the appellant's bed. The
appellant was on a couch in the living room. Appellant told the victim his clothes were in the
living room beside the aquarium.

 Appellant took the boys to breakfast and then to church. Appellant warned the
boys that if they told anybody about the previous night, he would get somebody to hurt them. 
Although the victim thought appellant was capable of carrying out his threat, he was not afraid
of him. The boys were embarrassed about what had happened and planned to keep it a secret. 
However, after "quite a while passed," they eventually told their father what had happened and
he took them to the police to make a report.

 The victim's brother's testimony for the most part corroborated the victim's
testimony. Appellant testified and agreed substantially that everything the boys said had happened
did happen with the important exception that he had never touched the victim's genitals. He
testified that he had not made any sexual contact.

 In Baker v. State, 781 S.W.2d 688 (Tex. App.--Fort Worth 1989, pet. ref'd), relied
on by appellant, the court held that "[t]he evidence [was] insufficient to prove any sexual contact
occurred." Since there was no sexual contact in Baker, there could not be sexual contact with the
intent to arouse Baker's sexual desires. Baker does not support appellant's contentions in this
case. Although not compatible with appellant's testimony, there is evidence to support a rational
finding that sexual contact occurred in this case.

 The trial court as the trier of fact could rationally accept the victim's testimony,
at least partially corroborated by his brother, that appellant touched the victim's genitals more than
once. The trial court could rationally infer from appellant's conduct and the circumstances,
including the bet he initiated, plying the boys with beer, suggesting that they play strip poker, and
his threat the next morning that appellant had the intent to gratify his sexual desire. The evidence
was amply sufficient to prove the essential elements of the offense charged and to support the trial
court's judgment. Appellant's point of error is overruled.

 The judgment is affirmed.



 

 Carl E. F. Dally, Justice

Before Justices Powers, Aboussie and Dally*

Affirmed

Filed: April 19, 1995

Do Not Publish









* Before Carl E. F. Dally, Judge (retired), Court of Criminal Appeals, sitting by assignment. 
See Tex. Gov't Code Ann. § 74.003(b) (West 1988).