Opinion issued March 4, 2004























In The
Court of Appeals
For The
First District of Texas
 

 
 
NO. 01-03-00403-CR
____________
 
CEDRIC DELANCY BROOKS, Appellant
 
V.
 
THE STATE OF TEXAS, Appellee
 

 
 
On Appeal from the 262nd District Court
Harris County, Texas
Trial Court Cause No. 930894




MEMORANDUM OPINION
          A jury found appellant, Cedric Delancy Brooks,


 guilty of murder and assessed
his punishment at confinement for 70 years. In his sole point of error, appellant
contends that the evidence was legally insufficient to support his conviction. We
affirm.
Facts
          Ushonda Wooten testified that, at approximately 6:00 p.m. on March 29, 2002,
she and her friend, Xiomara Gomez, went to see Willie Bookman at his home. As
they spoke with Bookman in front of his house, Stephen Johnson, the complainant,
and Herbert Brisbane came by and asked Bookman to sell them some “wick,” which
is marihuana laced with embalming fluid. Bookman told them that he did not have
any “wick.” After the complainant and Brisbane left, Bookman drove Wooten and
Gomez, in Gomez’s car, to appellant’s house to pick him up.
          Upon arriving at appellant’s house, Wooten noticed that appellant “looked
high,” and he got into an argument with Bookman, “pulled a [hand]gun,” and pointed
it at Bookman. Although appellant and Bookman resolved their argument non-violently, Wooten was afraid that appellant “was in a state of mind where he might
hurt somebody.” Wooten told appellant that he could not ride in Gomez’s car with
the handgun. Wooten put the handgun in the trunk of the car and put the clip of the
handgun in her bra. Bookman then drove appellant, Wooten, and Gomez to the
complainant’s house. Appellant and Bookman entered the complainant’s house and
Wooten and Gomez waited in the car.
          Alan Avery, a friend of the complainant, testified that he was at the
complainant’s house that evening. When Bookman and appellant entered the house,
Bookman briefly spoke with the complainant. Bookman and appellant left the house
for about five minutes, and then returned. After Bookman spoke briefly with the
complainant, he walked out the front-door, and appellant “stood around” in the
complainant’s house. At some point thereafter, appellant pulled out his handgun and
proceeded to rob Avery and the complainant. He took two pagers and approximately
$10 from Avery and a cell phone from the complainant. Bookman then re-entered the
house and asked appellant what he was doing. Bookman then “dragged” appellant
outside and told the complainant that “he was going to give him back his things.” 
Appellant, Bookman, Wooten and Gomez then left in Gomez’s car.
          About 10 minutes later, while Avery, the complainant, and Brisbane were
standing in the complainant’s front yard, appellant and Bookman returned. Brisbane
saw appellant walking up the complainant’s driveway and he immediately walked
over and punched appellant in the face. Appellant fell backwards, but then pulled out
his handgun and shot it in the air. At this point Avery, the complainant, and Brisbane
“took off running.”
          Avery ran into the complainant’s house and locked the front door. Appellant
followed him and, when appellant reached the front door, he kicked it open. Avery
then ran into a bedroom, and appellant continued to pursue him. Avery closed the
door to the bedroom and held it closed. When appellant reached the bedroom door,
he began kicking it and yelling “I’m going to kill you-all [sic].” After a short time,
appellant kicked the door off of its hinges and it fell on Avery as he fell to the floor.
          At this point, the complainant entered the bedroom and began “fighting” with
appellant. While they were “fighting,” Avery attempted to take the handgun from
appellant. Bookman then entered the bedroom and “pulled” Avery away from
appellant. After appellant regained sole control of the handgun, he pressed it “under
[the complainant’s] neck” and shot him. Avery was not sure how many times
appellant shot the complainant, but “[he] thought it was only once.”
          After appellant shot the complainant, Avery “jumped” on appellant and took
the handgun away from him. Avery then chased appellant and Bookman out of the
house. When Avery returned to the bedroom, he saw that the complainant was lying
on the floor and was not moving. Avery subsequently called for emergency
assistance, but the complainant died shortly thereafter.
          Dr. Ali Azizzadeh, a surgeon with the Baylor College of Medicine, testified
that, on the night of March 29, 2002, while he was working at Ben Taub Hospital, he
treated appellant for multiple gunshot wounds. Appellant had two wounds in his left
hand and an “entry wound” in his left leg.
          Houston Police Department Firearms Examiner D. Stein testified that he
analyzed two bullets recovered from the complainant’s body and a bullet found
underneath the complainant’s body in the bedroom. Stein determined that two of the
three bullets were “definitely” fired from appellant’s handgun and that one of them
“could have been.”
          Harris County Medical Examiner Dr. D. Wolf testified that the complainant
died from multiple gunshot wounds. He had “entry wounds” on his jaw, neck,
shoulder, and left arm and an “exit wound” in “the axillary area.” In Dr. Wolfe’s
opinion, the wound on the complainant’s jaw was fatal.
Legal Sufficiency of the Evidence
          In his sole point of error, appellant argues that the evidence was legally
insufficient to support his conviction because “the State failed to prove that he
intentionally and knowingly shot the complainant.”
          We review the legal sufficiency of the evidence by viewing the evidence in the
light most favorable to the verdict to determine if any rational fact finder could have
found the essential elements of the offense beyond a reasonable doubt. King v. State,
29 S.W.3d 556, 562 (Tex. Crim. App. 2000). Although our analysis considers all
evidence presented at trial, we may not reweigh the evidence and substitute our
judgment for that of the fact finder. Id.
          A person commits murder if he intentionally or knowingly causes the death of
an individual. Tex. Pen. Code Ann. § 19.02(b)(1) (Vernon 2003). Intent to kill may
be inferred from the use of a deadly weapon. Moreno v. State, 755 S.W.2d 866, 868
(Tex. Crim. App. 1988). A firearm is a deadly weapon. Tex. Pen. Code Ann. §
1.07(a)(17)(A) (Vernon Supp. 2004).
          Appellant asserts that, because he was shot in the left hand and left leg, there
is a “serious doubt as to who had control of the gun when it went off.” Appellant
further asserts that the evidence established that only one of the complainant’s
gunshot wounds was fatal and the State failed to prove that this wound was “actually
the product of intent and voluntariness.”
          However, Avery testified that he saw appellant shoot the complainant after
pressing the handgun “under his neck” and that appellant was the only person in
control of the handgun at that time. Avery also testified that, prior to kicking the
bedroom door off of its hinges, appellant stated “I’m going to kill you-all [sic].” 
Moreover, Dr. Wolf testified that the complainant had an “entry wound” on his jaw
and that this wound was fatal.
          Given this evidence, a rational fact finder could have found beyond a
reasonable doubt that appellant intentionally pressed his handgun under the
complainant’s neck and fired it, causing a fatal wound. Accordingly, we hold that the
evidence was legally sufficient to support appellant’s conviction.
          We overrule appellant’s sole point of error.Conclusion
          We affirm the judgment of the trial court.
 
 
                                                                        Terry Jennings
                                                                        Justice

Panel consists of Chief Justice Radack and Justices Jennings and Higley.

Do not publish. Tex. R. App. P. 47.2(b).