Howard v. State 
















IN THE
TENTH COURT OF APPEALS
 

No. 10-94-080-CR
&
No. 10-94-081-CR

     RICHARD CALVIN HOWARD,
                                                                                              Appellant
     v.

     THE STATE OF TEXAS,
                                                                                              Appellee
 

From the 283rd District Court
Dallas County, Texas
Trial Court Nos. F93-04286-VT & F93-04462-ST
                                                                                                    

O P I N I O N
                                                                                                    

      In cause number 10-94-080-CR Appellant Howard appeals his conviction for theft of property
of the value of $100,000 or more ($99,000 from Cleo and B. M. Gregory and $88,000 from Faye
and Bill Colquitt) for which he was sentenced to 99 years in the Texas Department of Criminal
Justice and a $10,000 fine.
      In cause number 10-94-081-CR Appellant Howard appeals his conviction for theft of property
of the value of $20,000 or more ($97,000 from John R. Hudson) for which he was sentenced to
20 years in the Texas Department of Criminal Justice and a $10,000 fine.
      The two cases were tried together; there is one statement of facts; and the briefs in both cases
are identical.
      In both cases Appellant was charged with theft by deception, i.e., he created and confirmed
by words and conduct a false impression of fact that was likely to affect the complainants'
judgment. Posing as a securities broker, Appellant advertised in newspapers: "Jumbo CD's, no
fee to investor, monthly interest, five-year, three-year, two-year, one-year; fully FDIC insured
(quoting a rate of interest higher than most banks); call today; R. Howard & Associates 1-800-676-2508."
      Interested persons were mailed information describing Appellant's services. Investors were
told that a one-year CD would be purchased at a Federal Deposit Insurance Corporation member
bank. Investors would wire or hand deliver checks to Appellant's office in Dallas. They were
promised a confirmation of the money's investment in an FDIC insurance bank and monthly
dividend checks. However, instead of purchasing CD's, Appellant invested the money in more
speculative securities in his name, other businesses he owned, paid dividends to the investors out
of newly invested money, and several hundred thousand dollars went directly to Appellant for his
own use. In November 1992 Appellant ceased mailing any interest checks to investors, closed his
office, and the investors lost their money.
      Cause number 10-94-080-CR charged that Appellant stole a $99,000 check from the Gregorys
and a $88,000 check from the Colquitts. Boyd Gregory testified that he is retired and lives on
investment income and Social Security. In late 1990 he saw Appellant's newspaper advertisement
for CD's that were "fully FDIC" insured. He testified that this meant the CD's were as good as
the Federal Government, and that he would only invest in a CD that was FDIC insured. He went
to Appellant's office and left an endorsed cashier's check for $99,000 to buy a CD. He received
Appellant's confirmation letter stating that he was affiliated with Dunn & Bradstreet, the Dallas
Chamber of Commerce, the Better Business Bureau, and the Dallas Black Chamber of Commerce. 
Gregory then received monthly interest checks from Appellant until November 1992. At one point
he received Appellant's letter telling him that his money was being moved from Bank One to the
Federal Guaranty Bank "to obtain a better rate of return." He was not told that Bank One had
closed Appellant's account. When the interest checks stopped, Gregory called Appellant's office
but got no answer; he went to Appellant's office and found it closed. The Gregorys never got
their money.
      Faye Colquitt testified that she and her husband are retired and live on investment income
from CD's; that they both saw Appellant's ad in the newspaper and called his office. Ms. Hill,
Appellant's secretary, told them Appellant instructed her to tell customers that the reason
Appellant was able to offer a high rate of return was because he took a lot of money from people
and combined it for their benefit, and that the CD's were FDIC insured. The Colquitts left a
cashier's check for $88,000 payable to Appellant for a CD. Ms. Colquitt thought she was
investing in a CD. She had received a receipt from Appellant stating he held the CD for
safekeeping and that the CD was fully FDIC insured. Later, the Colquitts received Appellant's
letter that the CD was being held for their benefit at Bank One. In June 1992, the Colquitts also
received a letter from Appellant stating their money had been moved from Bank One to Guaranty
Federal Bank due to better interest rates. The Colquitts received an interest check every month
until November 1992. In December they called and got no answer at Appellant's office and then
notified authorities. The Colquitts never got their $88,000 back.
      Cause number 10-94-081 charged Appellant stole a $97,000 check from John Hudson. 
Hudson testified that Appellant called and told him he had opened his own business as a CD
broker. Appellant offered to purchase a one-year CD at 7.7% interest at Continental Bank in
Chicago for Hudson, and represented that the CD was FDIC insured. Hudson paid for the CD
with a $97,000 check made payable to Appellant. Hudson received Appellant's letter stating the
terms of the CD but did not received anything from Continental Bank. Hudson received monthly
checks for the interest which were drawn on various banks. Hudson realized this was a problem
when he stopped receiving interest checks in November 1992. Hudson lost the $97,000.
      The State offered testimony of victims, who had been dropped from the original indictments,
as extraneous-offense testimony pursuant to Tex. R. Crim. Evid. 404(b) to show Appellant's
intent, motive, scheme, and continuing course of conduct.
      Joseph Dorsagna, a retired person, testified that he saw Appellant's ad, relied on the rate of
return offered, on the FDIC insurance, and sent Appellant $99,000 for a CD. He received a
confirmation letter but no CD. He received monthly interest checks until November 1992. He
called the authorities but never recovered his money.
      John Kucera gave almost identical testimony regarding his investment of $90,000; received
monthly interest checks, but lost his money. Lucius Hannon's testimony was almost identical
regarding a $75,000 investment for which he received a confirmation but no CD, and lost his
money. J. Scott Taylor gave almost identical testimony regarding his investment of $99,980,
thought his money purchased a FDIC insured CD, but lost his money. Lynn Cooper's testimony
was almost identical; was assured any investment would purchase a FDIC insured CD, and lost
$96,000.
      Chilo Rivera, an investigator with the Texas Securities Board, testified that he reviewed
Appellant's bank statements and developed spread sheets showing transactions in each of
Appellant's bank accounts. Based on his review, Rivera testified that Appellant had used some
investor deposits to pay other investors; disbursements were made to Appellant's other businesses;
to Appellant himself; and that no money was held in trust for any investor.
      Don Raschke of the Texas Securities Board testified that he had reviewed the individual
victims' files seized from Appellant and could find only one CD purchase in the records.
      The jury found Appellant guilty in both cases. In the punishment phase the State offered
evidence that Appellant was convicted in 1989 and in 1990 of misdemeanor hot checks and was
given 15 days in jail in each case. Here, Appellant was assessed 99 years and $10,000 fine in
cause number 10-94-080, and 20 years and a $10,000 fine in cause number 10-94-081. He appeals
in both cases on four identical points.



      Point one: "The trial court erred in denying Appellant's motion to quash in each case."
      Appellant asserts that both theft indictments should have been quashed because the allegations
of deception failed to afford him sufficient notice of the charges against him.
      The indictments in pertinent parts alleged:
            Defendant on or about the following dates did knowingly and intentionally
appropriate to-wit: acquire and exercise control over property . . . checks of the
following values representing current money of the USA, the ownership of said
property being the following individuals, who had possession of and a greater
right to possession of said property than the defendant in the following amounts:
               Date of Appropriation Amount Owners
              December 13, 1991 $99,000 Cleo and B. E. Gregory
              April 17, 1992 $88,000 Faye and Billy Colquitt
              February 26, 1991 $97,000 John R. Hudson
            and said defendant acted with the intent to deprive said of owners said property
permanently and for so extended a period of time that a major portion of the
value and enjoyment of said property was lost to said owners, and without the
effective consent of said owners in that consent was induced by deception, to-wit: said defendant created and confirmed by words and conduct, a false
impression of fact, that was likely to affect the judgment of said owners in the
transactions, and said defendant did not believe to be true; and all of said
amounts were obtained as alleged, in one scheme and continuing course of
conduct, and the aggregate value of the property so appropriated was at least
[$100,000 in cause number 10-94-080-CR and $20,000 in cause number 10-94-081].
Thus, the indictments tracked the language of Tex. Penal Code Ann. § 31.01(2)(A) and (4)(A). 
An indictment is sufficient to withstand a motion to quash if it contains the elements of the offense
charged and fairly informs the defendant of the charge against him. An indictment which tracks
the statutory language is ordinarily sufficient. Beck v. State, 682 S.W.2d 403, 407 (Tex. Crim.
App. 1985). An indictment need not plead evidence relied on by the State, only the facts essential
to give notice. Thomas v. State, 621 S.W.2d 158, 161 (Tex. Crim. App. 1981); Geter v. State,
779 S.W.2d 403, 407 (Tex. Crim. App. 1989).
      In both cases the indictment did not fail to convey any requisite item of notice. Appellant was
put on notice in the indictments as to the names of the victims, the amounts and date of the checks
which he appropriated, and that the victims consent was ineffective because it was induced by
deception in that Appellant created and confirmed by words and conduct a false impression of fact
which Appellant did not believe to be true and that was likely to affect the victims' judgment in
the transactions.
      The trial court did not err in denying Appellant's motion to quash in each case. Point one in
each case is overruled.
      Point two: "The court erred in failing to apply the law of the case to the specific facts as
requested by the appellant."
      Appellant asserts the trial court erred in overruling his objection to the guilt or innocence
charge in both cases. Appellant objected that the application paragraphs of the jury charges failed
to apply the law to the specific facts of the case, but Appellant did not submit a requested charge
or specify which facts he wanted included in the application paragraph. The application
paragraphs given by the trial court tracked the language of the indictments and the theft statute. 
The court was not required to list Appellant's specific acts of deception in the application
paragraph. Hawkins v. State, 656 S.W.2d 70, 73 (Tex. Crim. App. 1983); Milton v. State, 652
S.W.2d 958, 959 (Tex. Crim. App. 1983).
      The trial court's application paragraphs were proper and the court did not err in overruling
Appellant's objection to them. Point two in each case is overruled.
       Point three: "The evidence of guilt is insufficient to establish that Appellant deprived John
Hudson of a check for $97,000 in February 1991 as alleged in the indictment."
      Appellant asserts the evidence is insufficient to prove he stole a "check" from Hudson on
February 26, 1991, because Hudson's check was used to purchase a CD and Hudson "rolled over"
the CD into a renewed CD in February 1992. Appellant asserts that because Hudson had the right
to redeem the original CD in February 1992, but chose to reinvest the money, Appellant did not
appropriate the $97,000 check in February 1991.
      In considering the sufficiency of the evidence, the standard of review is the same for both
direct and circumstantial evidence cases; that is, viewing the evidence in the light most favorable
to the State, whether a rational trier of fact could have found the essential elements of the crime
beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319; Moreno v. State, 755
S.W.2d 866, 867 (Tex. Crim. App. 1988).
      John Hudson testified that, based on Appellant's fraudulent representations, he thought he had
purchased a CD with the $97,000 check on February 26, 1991. Hudson received a confirmation
letter and interest checks from Howard and Associates but never received anything from
Continental Bank. Hudson testified he believed that when the Continental Bank CD matured in
February 1992 it "rolled over" or automatically renewed for another year until February 1993. 
Hudson did not receive his interest check in December 1992 and has never recovered his $97,000. 
Hudson testified Appellant's advertisement stated the CD would automatically renew at the
maturity date unless Appellant was instructed in writing not to do so. On February 26, 1992, the
date on which the original "phantom" CD "matured," Hudson, not knowing he did not in fact have
a CD, authorized that "it be rolled over."
      Expert witness Raschke testified he reviewed Appellant's files and that the records showed
there was only one CD purchased. Defense expert witness Trior testified that Appellant did not
invest in bank CD's. Appellant's secretary, Ms. Hill, testified that contrary to the language of
Appellant's confirmation letter, no CD was ever purchased in an investor's name from a bank. 
Appellant commingled all funds and used them to pay personal bills, finance his other enterprises,
and pay interest to later investors.
      The jury was entitled to believe that no Continental Bank CD was ever purchased so it could
not have matured and been "rolled over" into a new investment. The jury was entitled to believe
that Appellant appropriated Hudson's check on February 26, 1991, with the intent to deprive
Hudson of it. Any rational trier of fact could have so found. Point three is overruled.
      Point four: "The court erred in allowing the prosecution to argue a theory of parties liability
which expanded upon the charge."
      Appellant asserts the trial court erred in overruling his objection to the following argument
by the prosecutor at the guilt or innocence phase:
      [PROSECUTOR]"    How was that money taken from them? It was taken from the investors
without their effective consent. And what does "without their affective
consent" mean? The money was taken from them by fraud. And
particularly what kind of fraud? By deception. And what makes up
deception? Words and conduct. And what kind of words and conduct
did you hear here? Conduct. You saw specific ads placed in the
Dallas Morning News. There were brochures, there were letters from
Howard and Associates. There were words from Mr. Howard, either
directly or, as one investor said, from the cellular phone of his
Mercedes. There were the words of Jacquline Hill. But Jacqueline
Hill got those words directly from Mr. Howard. It's clear that the
defendant acted knowingly and intentionally by setting up the words
and conduct, either directly through himself or Jackie Hill.
      [DEFENSE]:            Objection, your Honor. He's arguing a parties' charge that is not
contained in the indictment. Our objection would be the reference to
his conduct being responsible for Jackie Hill.
      THE COURT:          I overrule it. Those matters are in evidence.
      Appellant asserts the complained-of argument is erroneous because it contradicted the court's
charge which did not contain a parties instruction. Appropriate argument must fall within the
categories of: (1) summation of the evidence; (2) reasonable deduction from the evidence; (3)
answer to argument of opposing counsel; or (4) a proper plea for law enforcement. Borjan v.
State, 787 S.W.2d 53, 55 (Tex. Crim. App. 1990).
      Here the complained-of argument, which did not contradict the court's charge, was a proper
summation of and reasonable deduction from the evidence. Ms. Hill testified that she told the
defrauded investors what Appellant instructed her to tell them and that she mailed letters and
brochures and placed ads, all of which Appellant had composed, at Appellant's instructions.
      The defrauded investors testified as to their contact with Hill. The complained-of argument
was proper as a summation of and a reasonable deduction from the evidence. Point four is
overruled.
      The judgment is affirmed.
 
                                                                               FRANK G. McDONALD
                                                                               Chief Justice (Retired)

Before Chief Justice Thomas,
      Justice Vance, and
      Chief Justice McDonald (Retired)
Affirmed
Opinion delivered and filed January 24, 1996
Do not publish