NO. 07-02-0237-CR





IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL E



SEPTEMBER 24, 2002


______________________________



KERRY LEN BRADFORD
,




 Appellant


v.



THE STATE OF TEXAS, 




 Appellee

_________________________________



FROM THE 242ND DISTRICT COURT OF HALE COUNTY;



NO. B14371-0203; HON. ED SELF, PRESIDING


_______________________________



ORDER DIRECTING FILING OF REPORTER'S RECORD


__________________________________


Before QUINN and REAVIS, JJ., and BOYD, SJ. (1)

 Appellant, Kerry Len Bradford, appeals his conviction for unauthorized use of a
motor vehicle. Sentencing was imposed on May 7, 2002, wherein appellant received two
years confinement in a state jail facility. Notice of appeal was timely filed in the trial court
on May 20, 2002. The clerk's record was due on July 8, 2002, and subsequently filed on
July 17, 2002. The reporter's record was due to be filed on July 8, 2002, and extended to
August 7, 2002. However, August 7th came and went without the filing of the reporter's
record. On August 19, 2002, this Court provided, via U.S. mail, a reporter's request form
to David Fortenberry, the official court reporter, to be used by him in requesting additional
time to prepare the record. On August 30, 2002, this Court received a request from David
Fortenberry asking that we grant him an extension until September 10, 2002, to prepare
the record. To date, approximately 77 days have lapsed since the original due date to file
the reporter's record and it has not been received. Nor has the reporter explained the
latest default.

 Accordingly, we order David Fortenberry, the official court reporter for the 242nd
District Court of Hale County, to transcribe and file with the Clerk of this Court a reporter's
record as required by the Texas Rules of Appellate Procedure and encompassing the trial
had in cause number B14371-0203. Said record shall include all argument, evidence, and
exhibits presented to the court during trial, as well as any pre-trial and post-trial hearings
conducted by the court in said cause. We further order David Fortenberry to file the
complete reporter's record in a manner by which it will be received by the Clerk of this
Court on or before 5:00 p.m. on October 4, 2002. No further motions for extension of time
will be considered. Lastly, the failure to file the reporter's record by the date stated herein
may result in a hearing requiring Mr. Fortenberry to show cause why he should not be held
in contempt, a complaint to the body governing certified court reporters, appropriate
sanctions, or abatement and remand to the trial court for appropriate action.

 It is so ordered.

 Per Curiam

Do not publish.
1. John T. Boyd, Chief Justice (Ret.), Seventh Court of Appeals, sitting by assignment. Tex. Gov't
Code Ann. §75.002(a)(1) (Vernon Supp. 2002). 



ame="toc 4"/>
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 









NO. 07-09-00206-CR

 

IN THE COURT OF APPEALS

 

FOR THE
SEVENTH DISTRICT OF TEXAS

 

AT
AMARILLO

 

PANEL B

 



JULY
18, 2011

 



 

NICK LEE GRIEGO, APPELLANT

 

v.

 

THE STATE OF TEXAS, APPELLEE 



 



 

 FROM THE 242ND DISTRICT COURT OF
HALE COUNTY;

 

NO. B17934-0902; HONORABLE EDWARD LEE SELF, JUDGE



 



 

Before QUINN,
C.J., and CAMPBELL and HANCOCK, JJ.

 

 

OPINION

            A Hale County jury found appellant, Nick Lee Griego,
guilty of the third-degree offense of evading arrest or detention using a
vehicle and having previously been convicted for evading arrest or detention.[1]  It assessed punishment at ten years
imprisonment.

 

 

Procedural History

            On
original submission to this Court and prior to Brooks v. State, 323
S.W.3d 893 (Tex.Crim.App. 2010), appellants
contention regarding the state jail felony was limited to a challenge presented
in terms of factual sufficiency of the evidence.  In our original opinion, we addressed the
issues as presented and reversed and remanded the cause
to the trial court.  However, the State
filed its amended petition for discretionary review at a time that coincided
with the Texas Court of Criminal Appealss opinion in
Brooks and its elimination of factual sufficiency review.  See Brooks, 323
S.W.3d at 895.

            Under
the authority of Texas Rule of Appellate Procedure 50, we withdrew our opinion
to reconsider the instant cause.  See
Griego v. State, No. 07-09-00206-CR,
2010 Tex.App. LEXIS 8564, at *13
(order).  Pursuant to Brookss proclamation that the standards for
reviewing legal and factual sufficiency are indistinguishable and in light of
the fact that the Texas Court of Criminal Appeals remanded the case in Brooks
to the Waco Court of Appeals for reconsideration of the already-addressed legal
sufficiency, we directed the parties to supplement their briefing on the
approach to be taken post-Brooks when, as here, only factual sufficiency
was raised on original submission.[2]

            After
having considered the supplemental briefing, we ultimately concluded that
appellants factual sufficiency contentions regarding the state jail felony on
original submission raised the sufficiency of the evidence under Brooks
and reviewed those contentions and the record under the standard outlined in Jackson
v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 61
L.Ed.2d 560 (1979).  See
Griego v. State, 331 S.W.3d 815, 819
(Tex. App.Amarillo 2010), vacated on other grounds, No. PD-1226-10, 2011 Tex.Crim.App. LEXIS 594 (Tex.Crim.App. May 4, 2011) (per curiam).  As the Texas Court of Criminal Appeals noted
in vacating our judgment so concluding, we exceeded Rule 50s sixty-day period
in which to issue that opinion and were without jurisdiction to do so.  See Griego,
2011 Tex.Crim.App. LEXIS 594, at
*2.  The Texas Court of Criminal
Appeals vacated the January 11 opinion, reinstated our original opinion, and
remanded the cause to this Court to reconsider the issues in light of Brooks.  Id. at *3.

Application of Brooks

            When
the high court remanded the case for our reconsideration in light of Brooks,
we presume that the issue surrounding the application of Brooks to this
case remains.  Upon reconsideration of
the issues presented by this case and its timing in relation to Brooks,
we conclude that the issue of sufficiency of the evidence as delineated in Jackson
v. Virginia is before the Court despite the fact that appellant raised only
pre-Brooks factual sufficiency on original submission.  In the Texas Court of Criminal Appealss disposition of Brooks, there is a
reluctance to presume that a conclusion made in the pre-Brooks context
with respect to factual sufficiency necessarily implies a finding as to legal
sufficiency:

[W]e could decide that the court of appeals necessarily found that the
evidence is legally insufficient to support appellant's conviction when it
decided that the evidence is factually insufficient to support appellant's
conviction.  However, primarily because
the confusing factual-sufficiency standard may have skewed a rigorous
application of the Jackson v. Virginia standard by the court of appeals,
we believe that it is appropriate to dispose of this case by sending it back to
the court of appeals to reconsider the sufficiency of the evidence to support
appellant's conviction under a proper application of the Jackson v. Virginia
standard. Cf. Tibbs, 397 So.2d at
112526 (abandoning reversals based on weight of the evidence and stating that
[c]ases now pending on appeal in which a court has
characterized the reversal as based on evidentiary weight should be
reconsidered).

Brooks, 323 S.W.3d at 912.  So, for at least two reasons, we reject the
States position that legal sufficiency of the evidence was presumed on
original submission: (1) we were not asked to address the legal sufficiency of
the evidence supporting the state jail felony on original submission, and (2)
presuming that the evidence is legally sufficient is inconsistent with the
disposition in Brooks and its recognition that there is potential for
confusion in this arena since there is now only one standard to be
applied.  Brookss
call for reconsideration of the sufficiency in this context dissuades us from
disposing of appellants original issue as having raised nothing for our
review.[3]  See id.

            After
having reviewed the parties supplemental briefing and revisited the issues
presented in light of Brooks, we will again reverse appellants
conviction for the third-degree felony. 
Further, having concluded that the evidence is insufficient to sustain a
conviction for the lesser-included state jail felony offense, we refuse to
reform the trial courts judgment to reflect a conviction for evading arrest or
detention using a vehicle.  We conclude, however,
that the evidence is sufficient to
sustain a conviction for the misdemeanor offense of evading arrest or detention
and, therefore, remand the case to the trial court for a new trial on
punishment.

Factual Background

The Officers Accounts

            The
two pursuing officers, Hall and Erpelding, testified
at trial.  The two officers, in separate
cars, both with their lights and sirens activated, were en route to 717 Milwee in response to a report of a man with a gun.[4]  Dispatch provided them the name of the suspect
and a description of the vehicle in which he left the address.  On their way to 717 Milwee,
traveling southwest on El Barrio Road and then west on East Ninth Street, the
officers encountered a vehicle traveling in the opposite direction and matching
the description of the suspects car. 
The officers and appellant met on an approximately 135-degree bend at
which point El Barrio Road, running southwest and northeast, becomes East Ninth
Street, an east-to-west street.  The
officers turned around on East Ninth Street, after the bend, headed back east
on East Ninth Street and, then, in a northeasterly direction on El Barrio
Road.  By the time the officers had
stopped, turned around, negotiated the bend in the road, and began traveling
east-northeast, appellant had already traveled further northeast on El Barrio
Road and was nearing the intersection with Davidson Street, where he would turn
left and head due north.

            The
officers acknowledged that, after they turned around, appellants vehicle was
some distance ahead of them and had turned off El Barrio Road but testified
that they were able to see appellants car. 
Both officers also testified that they were not certain whether
appellant saw them turn around and were not certain whether he saw them heading
back in the same direction he was traveling. 
Additionally, Erpelding testified that he did
not know when or if appellant had seen the officers behind him on Davidson
Street either.  Hall conceded that it is
possible that appellant would not have seen the officers turn around on East
Ninth Street to travel in the direction he was going.  But, Hall explained, most of the time people
will pull over or keep watching where the patrol car is going.  Hall did not know if appellant saw them turn
around to pursue him before appellant turned onto Davidson Street; he was
adamant, however, that appellant saw the cars as they met him on the bend
traveling in the opposite direction.  His
testimony offered no further explanation as to how this initial encounter would
have served to put appellant on notice that the officers were attempting to
arrest or detain him.

            When
the officers turned north onto Davidson Street, appellant had already signaled
a right turn onto Nixon Street, going east.[5]  Erpelding testified
that he came within a couple of car lengths of appellants vehicle about
one-half to one block before appellant turned right onto Nixon Street.  After appellant turned right onto Nixon
Street, he made an almost immediate right turn into a residential
driveway.  As the
officers pulled up to the residence, appellant got out of his car and, with
beer in hand, walked toward the residence.[6]  The officers directed him to stop, and when
he did not comply, Hall used a taser on him.

            Neither
officer could determine the speed of appellants vehicle.  Officer Hall testified that appellant had
accelerated to some degree:

We could tell that it did speed up a little bit; not to a real high
rate, but a little bit.  Because, like I
said, we did observe it accelerate, and the dust was blowing up around the
vehicle as it was going down the street.[7]

Hall testified that the
officers had to go pretty fast to catch up to appellants vehicle.  Erpelding testified
that he accelerated as fast as his car would go to catch up with him after the
officers turned around.  Hall explained
that using a turn signal and maintaining a low speed is not conclusive as to an
evasion offense.  He stressed that
appellant was still evading when he exited the car and ignored the officers
orders to stop.

The Video Recording of the Pursuit

            The
DVD of the pursuit shows the point at which the officers met appellants
vehicle on the bend and shows the officers turn around, drive through the bend
again, and travel back to the northeast on El Barrio Road.  At that point, appellants car is not visible
directly ahead of the officers.  It is
not until the officers turn left onto Davidson Street that we, through the
perspective of the in-dash camera, again see appellants vehicle.  From the DVD and the officers testimony, it
appears that this is the first point at which the officers are directly behind
appellant and would be visible in appellants rearview mirror.

            As
the lead police car turned onto Davidson Street, appellant had driven
approximately one and one-half blocks north on Davidson Street and had already
signaled a right turn onto Nixon Street. 
Appellant completed that turn as the officers continued north on
Davidson Street.  After turning right
onto Nixon Street, appellant turned right into a driveway almost immediately.  From the time that the officers turned left
to go north on Davidson Street and saw appellants vehicle approximately one
and one-half blocks ahead signaling to turn right to the moment appellant
pulled into the driveway, approximately seventeen seconds elapsed.

            At
this point, the in-dash camera remained facing forward and did not record a
visual account of the confrontation outside the vehicle.  In the audio recording of that interaction,
as acknowledged by Erpelding at trial, appellant
responded to an unidentified bystander that he did not even know they were
following me.  Erpelding
then assured appellant that the officers did not say that he was evading them
and reiterated that they pulled him over only to investigate the report of a
gun in the car.

Concession of Error

            A
person who evades arrest or detention using a vehicle and having previously
been convicted of evading arrest or detention commits a third-degree
felony.  See Tex. Penal Code Ann. § 38.04(b)(2)(A).  The State
concedes that, to prove appellant guilty of the third-degree felony offense, it
was required to introduce evidence of appellants prior conviction for evading
arrest or detention at the guilt-innocence phase of trial and that it failed to
do so.  See Calton
v. State, 176 S.W.3d 231, 234, 236 (Tex.Crim.App. 2005). 
The States concession is well-taken; we have reviewed the record and
the law and agree that the evidence is insufficient as to the third-degree
felony offense.  With that, we reverse
the trial courts judgment of conviction and render a judgment of acquittal as
to the third-degree felony offense.

            We
next determine whether the evidence is sufficient to support a finding of guilt
on the lesser-included offense of evading arrest using a vehicle, a state jail
felony.[8]

Sufficiency of the Evidence

            Our
task now is to determine whether the State sufficiently proved the elements of
the state jail felony offense of evading arrest or detention using a
vehicle.  Generally, [a] person commits
an offense if he intentionally flees from a person he knows is a peace officer
attempting lawfully to arrest or detain him. 
Tex. Penal Code
Ann. § 38.04(a) (West 2011).  While, ordinarily, the offense of evading
arrest or detention is a misdemeanor, it becomes a state jail felony if the
actor uses a vehicle while the actor is in flight.  Id. at § 38.04(b)(1)(B).  A person acts intentionally, or with intent,
with respect to the nature of his conduct or to a result of his conduct when it
is his conscious objective or desire to engage in the conduct or cause the
result.  Tex. Penal Code Ann. § 6.03(a) (West 2011).  There is no statutory definition of the term
flees as used in section 38.04 though the term is commonly used to mean to
run away often from danger or evil, to hurry toward a place of security, or
to pass away swiftly.  Merriam-Webster's Collegiate
Dictionary 478 (11th ed. 2006).

Standard of Review

            In
assessing the sufficiency of the evidence, we review all the evidence in the
light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of
the offense beyond a reasonable doubt.  Jackson, 443 U.S. at 319; Ross v. State, 133 S.W.3d
618, 620 (Tex.Crim.App. 2004).  [O]nly that
evidence which is sufficient in character, weight, and amount to justify a factfinder in concluding that every element of the offense
has been proven beyond a reasonable doubt is adequate to support a
conviction.  Brooks, 323 S.W.3d
at 917 (Cochran, J., concurring).  We
remain mindful that [t]here is no higher burden of proof in any trial,
criminal or civil, and there is no higher standard of appellate review than the
standard mandated by Jackson.  Id.  When reviewing all of the evidence under the Jackson
standard of review, the ultimate question is whether the jurys finding of
guilt was a rational finding.  See
id. at 906, 907 n.26 (discussing Judge
Cochrans dissent in Watson v. State, 204 S.W.3d 404, 44850 (Tex.Crim.App. 2006), as outlining the proper application of
a single evidentiary standard of review).[9]  [T]he reviewing court is required to defer
to the jurys credibility and weight determinations because the jury is the
sole judge of the witnesses credibility and the weight to be given their
testimony.  Id.
at 899.

Analysis: State Jail Felony

            As
we read appellants argument, his assertions that he did not know the officers
were following him challenge the States evidence showing that he intentionally
fled from a person he knew was a peace officer attempting lawfully to arrest or
detain him.  For a defendant to be found
guilty of evading arrest or detention, it is essential that a defendant know
the peace officer is attempting to arrest him. 
Jackson v. State, 718 S.W.2d 724, 726 (Tex.Crim.App. 1986). 
See Redwine v. State, 305
S.W.3d 360, 362 (Tex.App.Houston [14th Dist.] 2010,
pet refd) (noting that a person commits the offense
of evading arrest or detention only if the person knows a police officer is
attempting to arrest him but nevertheless refuses to yield to a police show of
authority).  We will employ the
above-referenced standard of review to determine whether the evidence is
sufficient to establish that, while he was using a vehicle, appellant knew the
officers were attempting to arrest or detain him.

            We
first visit some relevant cases concerning this issue in a sufficiency of the
evidence context.  The Fourteenth Court
of Appeals examined the sufficiency of the evidence when an appellant argued
that he was traveling too slowly over too short a distance to have been fleeing
from a pursuing officer.  See Blozinski v. State, No. 14-07-00664-CR, 2009 Tex.App. LEXIS 2398, at *8 (Tex.App.Houston [14th Dist.] Apr.
2, 2009, no pet.) (mem. op. on rehg,
not designated for publication).  The
court disagreed, finding the following evidence sufficient:

Officer Arena testified that after he turned on his overhead lights,
made a u-turn to follow appellant, and activated his siren momentarily to
indicate that he was pursuing appellant, appellant continued to accelerate away
and then turned onto Princeton Drive.  On
Princeton, appellant began to alternately brake and accelerate erratically,
like he didnt know what to do, ultimately driving off the end of the road
into a wet grassy area and spinning his tires. 
When Arena pulled behind appellant, appellant reversed towards Arenas
vehicle, causing Arena to back away to avoid a collision.  Appellant then accelerated forward again
toward the end of the road, running partially off the road before finally
stopping halfway on gravel and halfway on grass.

Additionally, appellant himself testified that he saw Officer Arenas
lights come on before he ever turned onto Princeton. Appellant said that when
he saw the officers lights come on, he (appellant) took off and turned onto
Princeton.  Appellant admitted that once
he turned, he could see Officer Arenas vehicle and overhead lights in his
rearview mirror.  Thus, by appellants
own admission, he knew at this point that Arena wanted him to stop.

Id. at *910; see Rogers v.
State, 832 S.W.2d 442, 444 (Tex.App.Austin 1992,
no pet.) (finding evidence sufficient and observing
that courts should treat direct and circumstantial evidence of an appellants
knowledge with equal dignity).

            In
contrast, the evidence was legally insufficient in Redwine.  There, the evidence showed that the patrol
car met Redwines car traveling in the opposite
direction on a rural asphalt road.  Redwine, 305 S.W.3d at 361.  The deputies turned their vehicle around and
pursued Redwine for driving too near the center of
the undivided road.  Id.  From a distance, they followed [Redwine]s truck along the county road and then onto the
dirt driveway.  Id.  Initially, one of the officers testified that
they had activated the vehicles emergency lights and siren.  Id. at 36465.  That testimony was undermined, however, by
the other officer and by the absence of an in-dash camera recording of the
events.  Id. at
361.  In fact, the other officer
testified the deputies opted not to activate the lights and siren so that they
would not prompt Redwine to elude them; the court
viewed this as an attempt to conceal their intent to detain Redwine.  Id. 
When the officers arrived at the end of the dirt driveway, they
discovered Redwines unoccupied truck and began
shouting to identify themselves as sheriffs deputies.  Id. at 362.  Redwine, who had
exited the truck and run into the woods, eventually returned to his truck and
was arrested.  Id.

            On
appeal, the State pointed to Redwines written
statement that he had turned onto the dirt driveway to avoid further contact
with police as evidence he knew the officers were attempting to arrest or
detain him.  Id.
at 364.  The court disagreed,
making the distinction between hoping not to see the deputies again and knowing
that the deputies were attempting to detain him.  Id. 
Central to the courts analysis in Redwine
was the evidence that suggested, contrary to one officers equivocal testimony,
the officers had not activated their emergency lights or siren.  Id. at 36566.  The only evidence that suggested Redwine had failed to yield to a show of authority was this
hesitant testimony regarding the activation of emergency lights and
siren.  Id. at
367.  Noting that the officer
himself was uncertain as to whether the lights and siren were activated, the
court concluded that there was legally insufficient evidence that Redwine evaded arrest or detention using a vehicle.  Id. at 36768. (Emphasis in
original).  [I]n the absence of
other evidence, the jury could not translate [the officer]s uncertainty into
belief beyond a reasonable doubt.  Id. at 368.

            We
note that, while speed, distance, and duration of pursuit may be factors in
considering whether a defendant intentionally fled,[10]
no particular speed, distance, or duration is required to show the requisite
intent if other evidence establishes such intent.  See Mayfield v. State, 219
S.W.3d 538, 541 (Tex.App.Texarkana 2007, no pet.) (observing that law does not require high-speed fleeing or
even effectual fleeing; it requires an attempt to get away from a known officer
of the law); see also Robinson v. State, Nos. 13-10-00064-CR,
13-10-00065-CR, 2011 Tex.App. LEXIS
1844, at *1415 (Tex.App.Corpus Christi Mar. 10,
2011, no pet.) (concluding that, even though
appellant only drove approximately three blocks at slow speed, her own
testimony established that she had seen police lights but had refused to stop
because she was afraid).  We now
examine, the evidence concerning these factors, among others, that concern appellants
mental state.

            The
instant case presents a factual scenario similar to that presented in Redwine. 
Here, neither officer testified that appellant saw or should have been
able to see them in pursuit of him until the point at which they turned in behind
appellant on Davidson Street; in fact, each testified that he was uncertain
whether appellant saw him.  In the
absence of other evidence, the jury could not translate their uncertainty into
belief beyond a reasonable doubt that appellant did see the officers in pursuit
prior to their left turn onto Davidson Street. 
See Redwine, 305
S.W.3d at 368.  And there appears
to be no other evidence in the record that would support the conclusion that
appellant knew the officers were attempting to arrest or detain him.  Erpelding testified
that he came within a couple of car lengths of appellants vehicle only
one-half to one block before appellant turned onto Nixon Street.  So, after the officers turned onto Davidson
Street, they were following behind appellants vehicle for, at the maximum, one
block.

            The
DVD shows approximately seventeen seconds elapsed from the time the officers
turned onto Davidson Street to the time that appellant pulled into the driveway
off Nixon Street.  Of that
seventeen-second period, the officers were directly behind appellant, though at
some distance, on Davidson Street for approximately eight seconds before
appellant completed his already-signaled turn onto Nixon Street.  During the remainder of the seventeen
seconds, the officers were continuing north on Davidson Street, and appellant
was continuing eastward on Nixon Street and preparing to turn into the
driveway.  As the officers turned right
onto Nixon Street, appellant was turning into the driveway.  So, realistically, the officers were not
directly visible to appellant for the entire seventeen seconds.  That is to say, of the elapsed time of
seventeen seconds, the officers would have been visible in appellants rearview
mirror for approximately eight seconds. 
That period of seconds is the measure of time in which appellant could
have reasonably discovered that the officers were attempting to arrest or
detain him.

            Halls
insistence that appellant did see them when the officers met appellants
vehicle on the bend of East Ninth Street/El Barrio Road does not reasonably
support the jurys verdict that appellant knew the officers were attempting to
arrest or detain him.  Both officers
testified that they had already activated their lights and sirens on the police
cars.  The audio portion of the recording
confirms this.  At first glance, this
might appear to distinguish the instant case from Redwine.  However, it is important to note that the
officers were traveling in the opposite direction from appellant when appellant
would have been able to take notice of the lights and sirens.  Appellant, having met the officers traveling
in the opposite direction with their lights and sirens already activated, could
not have known from that encounter that the officers were attempting to arrest
or detain him.[11]  To the contrary, officers who were traveling
in the opposite direction using lights and sirens would appear to be responding
in that direction to another matter.

            The
DVD shows the precise point at which the officers and appellant met on the
bend.  The officers traveled through the
bend and were on East Ninth Street when they turned around.  At that point, appellant had traveled well
past the bend on El Barrio Road in the other direction and either had already
turned or was about to turn off El Barrio Road onto Davidson Street.  Consistent with the officers uncertainty as
to whether appellant saw them following him, the DVD suggests that the officers
were not behind appellant such that he would have been able to see them turn
around or traveling in pursuit of him on the road on which they first met.  The positions of the three vehicles,
following the officers u-turns, suggest that the officers may have been
visible, if visible at all, over appellants left shoulder at some distance as
appellant traveled north on Davidson Street. 
The officers testified that they were able to see where he turned.  Nothing, however, shows that appellant,
having already turned left onto another road, and whose vision in the direction
of the officers would have been limited to what he could see in his periphery
or in his rearview mirror, would have been able to see the officers and
conclude that they were now traveling in the same direction as he was and were
attempting to arrest or detain him.

            Nothing
in the record suggests that appellant was speeding or driving in an erratic
manner.  There is testimony that he
accelerated to some degree after he turned. 
The officer conceded, however, that deceleration before a turn followed
by acceleration after a turn is consistent with regular driving.  Evidence that the officers had to accelerate
to catch up with appellant is also not necessarily conclusive that appellant
was evading arrest or detention.  The
officers testified and the DVD shows that the officers had to turn around after
the bend in the road and then accelerate to make up the distance that would
naturally occur when a vehicle travels in the opposite direction for some
time.  Nothing prior to the officers
left turn onto Davidson Street establishes that appellant knew the officers
were attempting to arrest or detain him.

            We
turn now to the evidence of the incident from the moment the officers turned
onto Davidson Street to travel north in the direction that appellant had
turned.  The officers testified that, after
turning onto Davidson Street, they saw that appellant had already signaled to
turn right onto Nixon Street.  Indeed,
the DVD seems to confirm this testimony and seems to show that appellant had
slowed to some degree to make that turn as evidenced by what appear to be brake
lights.  The officers continued north on
Davidson Street toward appellant, who was preparing to turn right, leaving us
with evidence that officers were directly behind appellant with their lights
and sirens on for one-half to one block before appellant turned onto Nixon
Street, immediately pulled into the residential driveway, exited the car, and
began walking up to the residence.

            Evidence
that appellant got out of his car and, instead of running or hiding, began
walking toward the residence while carrying a beer also indicates that he did
not know officers were attempting to arrest or detain him.  We may infer an actors mental state from
actions and statements during and after the incident.  See Blozinski,
2009 Tex.App. LEXIS 2398, at *1112 (citing Alexander
v. State, 229 S.W.3d 731, 740 (Tex.App.San
Antonio 2007, pet. refd), and concluding that
apologetic and explanatory statements that appellant was sorry and just
wanted to get away from you further supported the conclusion that he had
intentionally fled from the officer).

            The
State points to appellants failure to comply with officers orders once he
exited the car as evidence that appellant knew the officers were attempting to
arrest or detain him.  In response to the
States contention, we initially observe that appellants apparent refusal,
upon exiting the vehicle, to comply with the officers orders, of which we have
limited testimony and only audio recording, is not an element of evading arrest
or detention using a vehicle.  Examining this evidence, however, as the
State suggests, as evidence of appellants intent while he was in the vehicle,
we conclude that it remains insufficient to enable a jury to rationally
conclude that appellant knew, as he drove his vehicle, that the officers were
attempting to arrest or detain him prior to his arrival at the residence.  The States focus on this evidence ignores
that appellant was walkingnot running or hidingand doing so while carrying a beer.  Appellants statement that he did not even
know the officers were following him also suggests he did not have the
requisite knowledge.  Appellants
noncompliance with the officers commands may be probative of another offense
but lends very little, if anything, to establish that appellant knew, as he
drove for a matter of seconds for little more than a block, that the officers
were attempting to arrest or detain him. 
Such evidence is insufficient to enable a jury to conclude beyond a
reasonable doubt that appellant knew, prior to exiting his vehicle, that the
officers were attempting to arrest or detain him.

            In
summary, we have considered the following evidence in our review:  (1) the absence of affirmative evidence that
appellant should or could have seen the officers turn around to pursue him; (2)
the route of the pursuit, including the parties locations and
characteristics of the road that would make it physically unlikely or
impossible that appellant could have seen the officers turn around to pursue
him; (3) the distance over which the officers were directly following appellant
and the seconds that elapsed between the time the officers first began to
follow appellant and the time he pulled into the driveway; (4) the unremarkable
speed at and manner in which appellant appeared to drive; and (5) appellants
conduct and statements upon exiting the car at the residence.

            Evidence
that the officers were directly behind appellant for one-half to one block such
that he would have had a maximum of seventeen seconds in which to determine that
the officers were attempting to arrest or detain him and respond appropriately
is insufficient in character, weight, and amount to enable the jury to conclude
beyond a reasonable doubt that appellant knew the officers were attempting to
arrest or detain him.  Because the
evidence is insufficient to show this essential element of the offense, we will
not reform the trial courts judgment to reflect conviction of the state jail
felony offense.

Analysis: Misdemeanor

            In
his supplemental briefing, appellant maintains that the evidence is also
insufficient to show that appellant committed the base offense of evading
arrest or detention, a misdemeanor.  Just
as it must when trying to prove a felony evasion offense, to prove a defendant
guilty of the misdemeanor base offense, the State must show that a defendant
knew the officers were attempting to detain him or her.  See Jackson, 718
S.W.2d at 726.  And it is on this
point that that the evidence outlined earlier failed with respect to evading
arrest while using a vehicle.  With
respect to the misdemeanor offense of evading arrest or detention, however, our
analysis is different.  

            The
record shows that appellant got out of his vehicle, began walking up to the
residence, and failed to comply with the officers orders to stop.  So, looking at the evidence of appellants
conduct after the officers gave him directions to stop, we conclude that a jury
could have found beyond a reasonable doubt that appellants noncompliance following
the officers directives to stop was sufficient to satisfy the elements of the
misdemeanor offense.

            The
distinction to be drawn here is one of timing.[12]  The evidence before us is not sufficient to
show that appellant knew, before getting
out of his car, that the officers were attempting to arrest or detain
him.  But, after the officers ordered him to stop, appellant knew or should
have known that the officers were attempting to arrest or detain him.  That is, appellants noncompliance with the
officers orders was insufficient to show previous knowledge that the officers
were attempting to arrest or detain him but was sufficient to show that, after
repeated orders to stop, appellant knew or should have known that the officers
were attempting to arrest or detain him. 
The evidence shows that the officers made a show of authority and that
appellant refused to yield to it.  See
Redwine, 305 S.W.3d at 362.

            It
was after appellant got out of the car and after the officers ordered him to
stop that appellant knew the officers wanted to arrest or detain him.  His continued effortalbeit atypically
unenthusiasticto continue on his way to the residence in spite of the
officers orders was sufficient to show that appellant evaded arrest or
detention.  See Sartain v. State, No. 03-09-00066-CR, 2010 Tex.App. LEXIS 3877, at *8 (Tex.App.Austin May 19, 2010, no pet.) (mem. op., not designated for publication) (observing that conduct may still be evading [h]owever ineffectual appellants brief flight may have
been); see also Diaz v. State, No. 08-09-00002-CR, 2010 Tex.App. LEXIS 6700, at *5 (Tex.App.El Paso Aug. 18, 2010, no pet.) (not designated for publication) (concluding
that evidence was sufficient when both officers testified that Appellant
walked away after being questioned at the gate despite their commands to
stop).

            Based
on our conclusion that the evidence is sufficient to support the conclusion
that appellant committed the misdemeanor offense of evading arrest or
detention, we modify the trial courts judgment to reflect that appellant was convicted
of the class B misdemeanor offense of evading arrest or detention[13]
and remand the cause to the trial court for a new trial on punishment.

Conclusion

            Having
concluded that the evidence was insufficient to sustain appellants conviction
for the third-degree felony evading offense, we reverse the trial courts
judgment and render judgment of acquittal as to the third-degree felony of
evading arrest or detention using a vehicle and having previously been
convicted or evading arrest or detention. 
Having concluded that the evidence is insufficient to support
reformation of the trial courts judgment to reflect that appellant was guilty
of the state jail felony conviction of evading arrest or detention using a
vehicle, we do not reform the judgment. 
We do find that the evidence was sufficient to support reformation of
the judgment to show that appellant was guilty of the misdemeanor offense of
evading arrest or detention.  We reform
the judgment to reflect that appellant was guilty of the class B misdemeanor
offense[14]
of evading arrest or detention and remand the cause to the trial court for a
new trial on punishment.[15]

 

 

                                                                                                Mackey
K. Hancock

                                                                                                            Justice

Publish.  











[1]
See
Tex. Penal Code Ann. § 38.04(b)(2)(A) (West 2011).

 





[2]
We recognize that sister courts have taken other
approaches when presented with cases presenting similar procedural concerns.  See Cozzens v. State, No.
06-09-00157-CR, 2010 Tex.App. LEXIS 9336, at *1, *1213,
*13 n.8 (Tex. App.Texarkana Nov. 24, 2010, pet. refd)
(concluding that Texas law no longer recognizes a claim of factual insufficiency
of the evidence as a basis for review on appeal and declining to address
appellants point of error raising only factual sufficiency and not accompanied
by a legal sufficiency point of error); Mauldin v. State, No.
08-09-00028-CR, 2010 Tex.App. LEXIS 8979, at *23 (Tex.App.El Paso Nov. 10, 2010, pet. refd.) (when appellants sole
issue on appeal challenged the factual sufficiency of the evidence, concluding
that, in the interests of justice, and in light of the Brooks decision,
we will construe [the sole issue] as a challenge to the legal sufficiency of
the evidence); see also Heslep v.
State, No. 11-09-00226-CR, 2011 Tex.App. LEXIS 4210, at *3 (Tex.App.Eastland June
2, 2011, no pet. h.); Dickson v. State, Nos. 02-10-00176-CR to 02-10-00178-CR,
2011 Tex.App. LEXIS 1606, *2
n.2 (Tex.App.Fort Worth Mar. 3, 2011, no pet.).





[3]
Unlike the Waco court in Brooks, we were
not called upon to expressly address the legal sufficiency of the
evidence.  Though the State advances the
position that our holdings in our original opinion are such that legally
sufficient evidence must be presumed, we recognize the awkward procedural
posture in which this case stands in light of Brooks.  Because appellant only raised the factual
sufficiency of the evidence with regard to the state jail felony, we made no
explicit conclusions regarding the legal sufficiency of the evidence.  Simply put, we were not asked to address
legal sufficiency on original submission, we did not do so, and we will not, on
reconsideration, read the issues raised on original
submission as ones that presume that legally sufficient evidence supported the
state jail felony offense.

 





[4]
At the scene, appellant invited the officers to
search his vehicle, insisting that he had no gun.  The search yielded no gun.





[5]
We may take judicial notice of adjudicative
facts, whether requested to do so or not, when those facts are not subject to
reasonable dispute because they are capable of accurate and ready determination
by resort to sources whose accuracy cannot reasonably be questioned, and we may
do so for the first time on appeal. Tex.
R. Evid. 201(b), (c), (f); Granados
v. State, 843 S.W.2d 736, 738 (Tex.App.Corpus Christi 1992, no pet.).  We are, therefore, authorized to and do take
judicial notice that Nixon Street is the second named cross street as one
travels north on Davidson Street after having turned north off El Barrio Road
in Plainview, Texas.  We also take
judicial notice of the location, direction, and trajectories of the other
streets described during this encounter. 
See Fernandez v. State, 306 S.W.3d 354, 365 (Tex.App.Fort Worth 2010, no pet.) (Dauphinot, J., dissenting) (noting
that judicial notice can be taken of the location of cities, counties, boundaries,
dimensions, and distances because geographical facts are easily ascertainable
and capable of verifiable certainty).  

 





[6]
Hall conceded that, typically, a suspect who is
fleeing will exit his or her car and run into a building or act in some manner
to continue to evade the officers.

  





[7]
On cross-examination, Hall conceded that it is
typical for drivers to accelerate after a left turn onto another street.  Erpelding similarly
acknowledged that a driver usually slows down prior to making a turn then
speeds up again following the turn. 





[8]
If the evidence is sufficient to support a
conviction for evading arrest or detention using a vehicle, since such an
offense was included in the jury charge, we are authorized to reform the
judgment to reflect that appellant was guilty of evading arrest or detention
using a vehicle, a state jail felony.  See
Haynes v. State, 273 S.W.3d 183, 184 (Tex.Crim.App.
2008); Collier v. State, 999 S.W.2d 779, 782 (Tex.Crim.App.
1999).

 





[9]
We note that this Court has at times quoted Moreno
v. State, 755 S.W.2d 866, 867 (Tex.Crim.App.
1988), for the proposition that we had to uphold the verdict of the jury unless
it was irrational or unsupported by more than a mere modicum of evidence.  We view such a statement, insofar as a
modicum of evidence being sufficient evidence, as contrary to a rigorous
application of the Jackson standard of review urged by the Court in Brooks.
  





[10]
We note a number of instances in which speed and
distance of the pursuit, though not conclusive, were relevant to the
sufficiency of the evidence.  See Britt
v. State, No. 14-06-00131-CR, 2007 Tex.App. LEXIS 3148, at *910 (Tex.App.Houston [14th Dist.] Apr. 26, 2007, pet. refd)
(mem. op., not designated for publication) (holding
evidence was sufficient where testimony showed defendant drove his vehicle a
significant distance with a patrol car in pursuit); Luna v. State, No.
04-05-00518-CR, 2006 Tex.App. LEXIS
5779, at *5 (Tex.App.San Antonio July 5, 2006, no pet.) (mem.
op., not designated for publication) (holding evidence was sufficient where
officer pursued defendant for four miles); Hobyl
v. State, 152 S.W.3d 624, 628 (Tex.App.Houston [1st Dist.] 2004, pet. dismd)
(holding evidence was sufficient to sustain conviction where officer testified
defendant had accelerated and was followed for three miles at 110 miles per
hour).





[11]
We also reiterate that, contrary to the report
communicated to the officers, no gun was found on appellants person or in his
car.  This evidence would further
undermine the States position that appellant should have known or suspected
that the officers traveling in the opposite direction were attempting to arrest
or detain him.





[12] The State has pointed out that, in our original
opinion, we failed to emphasize that appellant seemingly acknowledged his
commission of the offense when he admitted to the officer that he should have
stopped.  The State maintains that by
pointing out, instead, that appellant stated that he did not realize the
officers were following him, we stepped outside our role as a reviewing court
and made credibility determinations or re-weighed contradictory
statements.  In response to this
position, we point out that, in the sometimes cacophonous interaction
immediately following appellants exit from the vehicle, we have not been able
to hear a clear acknowledgement of wrongdoing. 
To the extent there is one, we would respond that, considering the
context, such an acknowledgement would likely have referred to his failure to
follow the officers orders once outside the vehicle.  The officers assured him that they were not
accusing him of evasion: We never said you were evading us out here in this
vehicle.  And they then repeated the
report of a gun in the car.  Based on the
officers assurances, appellant would have no reason to admit that he should
have stopped in his car.

 





[13]
Although the district court would not ordinarily
have jurisdiction over a trial on misdemeanor charges, it retains jurisdiction
here over this offense as a lesser-included offense of the felony offense
alleged in the indictment.  See Golden
v. State, 833 S.W.2d 291, 292 (Tex.App.Houston
[14th Dist.] 1992, pet. refd) (citing Mueller v.
State, 119 Tex.Crim. 628, 43 S.W.2d 589 (Tex.Crim.App. 1931), and concluding that [t]he
jurisdiction of the district court, having attached by reason of the indictment
for the felony offense of theft, retained jurisdiction for the lesser included
misdemeanor offense of theft).

 





[14]
The Texas Legislature amended section 38.04 of
the Texas Penal Code in the 2009 legislative session, elevating the base
offense under section 38.04 from a class B misdemeanor to a class A misdemeanor
and adding an additional ground for enhancement to a state jail felony.  See Act of May 27, 2009, 81st Leg.,
R.S., ch. 1400, § 4, 2009 Tex. Gen. Laws 4385,
438586 (prior version at Tex. Penal Code Ann. § 38.04).  Because the indictment here was filed in
February 2009, the pre-amendment version of section 38.04 would apply, making
the offense a class B misdemeanor. 


 





[15]
Further, we deny that portion of the States
previously-filed motion carried with the case in which the State asks this
Court to affirm the trial courts judgment.