NO. 07-04-0241-CV



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL A



SEPTEMBER 8, 2004



______________________________




KENNETH AND DAWN DESCHLER, APPELLANT



V.



GIRISH VALLABHAN, M.D., APPELLEE




_________________________________



FROM THE 237TH DISTRICT COURT OF LUBBOCK COUNTY;



NO. 2003-522,667; HONORABLE SAM MEDINA, JUDGE



_______________________________



Before JOHNSON, C.J., and REAVIS and CAMPBELL, JJ.

MEMORANDUM OPINION


 On September 7, 2004, appellants, Kenneth and Dawn Deschler, filed a Motion for
Voluntary Dismissal pursuant to Tex. R. App. P. 42.1(a)(2) (1) based on an agreement
resolving the underlying dispute. The motion includes a certificate of service that counsel
for appellee was served a copy of the motion via fax on September 2, 2004. No response
to the motion has been received. 

 Accordingly, without passing on the merits of the case, appellant's Motion for
Voluntary Dismissal is granted and the appeal is hereby dismissed. Rule 42.1(a). 

 All costs are assessed to appellant. Having dismissed the appeal at appellant's
request, no motion for rehearing will be entertained, and our mandate will issue forthwith. 


 Phil Johnson

 Chief Justice


 

1. A rule of appellate procedure will hereafter be referred to as "Rule ____."


e wanted information on
Gonzalez. Samuel looked up Gonzalez's information on her computer and noticed that
she was listed as a "confidential" patient. The "confidential" designation prohibited Samuel
from giving out any data about Gonzalez. Though Samuel subsequently told appellant she
had no information about the person he mentioned, appellant stated he knew she was in
the hospital and attempted to view the computer screen. At that point, Samuel cleared the
screen. 

 Appellant's second attempt occurred minutes later at another of the facility's
buildings. There, he approached Kimberly Pencak (the security service officer on duty),
flashed his badge within two or three inches from her face, and stated that he was a
Houston police officer and that he needed information on patient Gonzalez. When Pencak
looked up Gonzalez's information, appellant attempted to look at her computer screen by
going around her desk. She quickly cleared the screen preventing appellant from doing
so. So too did she tell him that she had no patient by the name of Iris Gonzalez and that
he was welcome to use the courtesy phone to call one of the family members. Appellant
then left.

 His third attempt on June 27th came minutes later at another locale within the facility. 
Marisol Pena testified that she saw appellant "[come] in through the doors, [go] past me
towards the elevator." She asked him if she could help him and "he [came] around my
desk and he [pulled] out a badge and he [said] H.P.D. and [put] it back in his pocket." So
too did he state that he was looking for patient Gonzalez. After looking up Gonzalez's
information, Pena asked appellant if had a six digit code which would have allowed him
access to Gonzalez. After stating that he did not, appellant left.

 Appellant's final attempt came on the morning of June 28, 2000. And, much like his
third attempt, he walked past the security service officer to the elevator. The only
difference was that this time he was in his Houston police uniform with sidearm. The
security officer on duty was Talita Braxton. She testified that appellant, in full uniform,
hurriedly entered the building, bypassed her desk, approached the elevator, and told her
to "[l]et me up to three." Because he was in uniform and she had "no reason to distrust a
uniformed officer," she replied, "I will let you up." At that point, Braxton unlocked the
elevators for appellant and allowed him to proceed. 

Standard of Review

 In considering the legal sufficiency of the evidence, the court views the relevant
evidence, both circumstantial and direct, in the light most favorable to the verdict and
determines whether any rational trier of fact could have found the essential elements of the
crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 2789,
61 L.Ed.2d 560 (1979); King v. State, 29 S.W.3d 556, 562 (Tex. Crim. App. 2000). This,
however, does not permit the court to sit as a thirteenth juror. Moreno v. State, 755 S.W.
2d 866, 867 (Tex. Crim. App. 1988). Rather, the reviewing court merely acts to safeguard
due process and to ensure the rationality of the fact-finders verdict. Teer v. State, 923
S.W.2d 11, 17 (Tex. Crim. App. 1996).

 Next, one is guilty of official oppression if he 1) is a public servant, 2) who
intentionally denies or impedes another in the exercise or enjoyment of any right, privilege,
power, or immunity while knowing his conduct to be unlawful, and 3) while acting under
color of his office or employment. Tex. Penal Code Ann. §39.03(a)(2) (Vernon 1994). 
Furthermore, a public servant acts under the color of his office or employment if he "acts
or purports to act in an official capacity or takes advantage of such actual or purported
capacity." Id. at §39.03(b). 

Application of Standard 


 Acting under color of office or employment


 To the extent that appellant contends the state failed to prove that he acted under
color of his office while attempting to gain access to Gonzalez, we find of record evidence
illustrating that he thrice flashed his official badge to various security officers the previous
day and that he appeared in full uniform and directed Braxton to give him access to the
third floor. While it may be that appellant did not tell Braxton that he was a police officer,
as he did the other security officers, words are not the only form of communication at work
here. Wearing one's official police uniform with sidearm imparts to those who view him the
information that he is a police officer. DeMoss v. State, 12 S.W.3d 553, 557 (Tex.
App.-San Antonio 1999, pet ref'd). Couple that with his 1) previous attempts to gain
access by informing security personnel that he was a Houston police officer while flashing
his official badge, and 2) directive to Braxton to allow him access to the third floor, we
cannot but hold that ample evidence exists upon which a fact-finder could conclude,
beyond reasonable doubt, that appellant acted or purported to act in his official capacity,
or took advantage of that actual or purported capacity in demanding access to Gonzalez. (1) 
This is especially true given Braxton's own testimony that she permitted appellant to
continue on because she had "no reason to distrust a uniformed officer . . . ."


 Deny or impede


 As to the matter of denying or impeding Braxton from exercising the right or privilege
to exclude him from the premises, appellant suggests that she allowed him to proceed
based upon her own violation of policy as opposed to the belief that appellant was a
Houston police officer operating under color of office. And, because she so acted, he
allegedly neither denied or impeded her in the exercise of any right or privilege, and a
finding to the contrary lacked legally sufficient evidentiary support. We disagree.

 It may be that the facility hired off-duty police officers to roam the halls in uniform
and policy required Braxton to screen all, including such off-duty officers, before allowing
them to proceed. Yet, such individuals were hired because they were police officers
capable of roaming in official police garb. In other words, they implicitly were hired by the
facility because they could take advantage of their actual or purported capacity as a police
officer. And, it is because appellant appeared before Braxton as a police officer that she
allowed him access. She told the court when asked if she would have permitted appellant
to visit at that time, "[n]ot if he was in plainclothes, no sir." Again, she "had no reason to
distrust a uniformed officer."

 Simply put, appellant (while knowing he lacked legitimate access to Gonzalez)
utilized the uniform and thereby took advantage of his actual or purported capacity as a
police officer, to dupe Braxton into foregoing her right, privilege and authority to screen
him. Indeed, she may have been wrong in ignoring policy and that may have also been
a factor in her decision. Yet, we cannot close our eyes to the fact that she also relied upon
appellant's appearance as a genuine police officer. Consequently, some evidence exists
upon which a rational fact-finder could find beyond reasonable doubt, that appellant
denied or impeded Braxton in the exercise of a right or privilege while acting under color
of office. 

 Accordingly, we affirm the judgment of the trial court. 


 

 Brian Quinn

 Justice


Do Not Publish. 

1. To the extent that appellant relies on Blasingame v. State, 706 S.W.2d 682 (Tex. App.-Houston [14th
Dist.] 1986, writ ref'd), we find the case inapposite. There, the accused represented himself to be a vice
officer while he was actually the local mayor. And, though the court held that the evidence was insufficient
to support conviction, it did so because the accused represented himself to be a vice officer as opposed to
the mayor. Simply put, the court held that the defendant must be a public servant acting under the color of
"his own office or employment," not some other. Id. at 684 (emphasis added). Since Blasingame was not
representing himself as the mayor, he could not be convicted of official oppression. Here, we do not have the
appellant representing himself to be anything other than a police officer to gain access to Gonzalez. So,
Blasingame is inapposite.