Opinion issued August 11, 2011



In The

Court of
Appeals

For The

First District
of Texas

————————————

NO. 01-10-00844-CR

———————————

Damion Roberts, Appellant

V.

The State of
Texas, Appellee



 



 

On Appeal from the 230th District Court

Harris County, Texas



Trial Court Case No. 1253272

 



 

MEMORANDUM OPINION

          A
jury found appellant, Damion Roberts, guilty of the offense of aggravated
robbery[1] and assessed his punishment
at confinement for fifty years.  In his
sole point of error, appellant contends that the evidence is legally insufficient
to support his conviction.  

          We
affirm.

Background

          Jose
Acosta, a branch manager of a bank in Houston, testified that on June 11, 2009,
appellant and another man entered the bank. 
Appellant approached Acosta, showed him a handgun, and threatened to
kill him if he pushed an emergency button. 
Appellant then approached another bank teller, Unyime Ibiok, and when Acosta
attempted to push the emergency button, appellant again threatened to kill him
if he pushed the button.  Appellant told
Acosta and Ibiok to open the bank’s vault and give him money.  Acosta filled an old pillowcase with money, but
placed a tracking device in the pillowcase before giving it to appellant.  As appellant and his accomplice left the bank,
appellant told Acosta and Ibiok to remain in the vault.  Once the assailants exited the bank, Acosta
and Ibiok called for emergency assistance.

          Several
weeks, or “maybe” a month later, police officers contacted Acosta and asked him
to observe a “live lineup.”  Acosta and
Ibiok drove together to a police station for the lineup and met with Houston
Police Department (“HPD”) Sergeant B. Madden and one other police officer.  The lineup consisted of five or six men, and the
officers instructed each of these men to repeat the phrase, “If you push the
button, I’m going to kill you.”  Acosta explained
that he identified appellant “as soon as [he] came out” into the lineup.  After the lineup, the officers asked Acosta
and Ibiok individually whether they could identify any of the men, and Acosta informed
the officers that he was “positive” that appellant was the man who had robbed the
bank.  

Acosta noted that he had spent five
to ten minutes with appellant during the course of the robbery, he was in close
proximity to appellant during this time, and he was within one foot of appellant’s
gun and two to three fee of appellant.  Acosta
explained that he identified appellant during the lineup based on both his “appearance
and voice.”  Acosta agreed that, as
reflected in surveillance pictures from the bank that were introduced into
evidence, the man who robbed him was wearing a hat, sunglasses, and a bandana
on his head, which came down to “above his eye level.”  However, Acosta stated that he could see
through the sunglasses and he could see appellant’s “nose and the bottom of his
face.”  Acosta then identified appellant
in the courtroom as the man who robbed him. 


          Ibiok
testified that she noticed two men enter the bank who were acting
suspiciously.  One of the men was shorter
and “stocky” and wore a buttoned shirt, black hat, and sunglasses.  The other man wore “one big overall” with a
cap and sunglasses.  The stocky man
approached her carrying a handgun and told her not to move.  Ibioik pressed an emergency button, and the
stocky man instructed her to open an internal door to get inside the bank area
and then open the vault with Acosta.  The
man, who was pointing the gun at both Ibiok and Acosta, gave Ibiok a pillowcase
in which Acosta was to place money. 
Ibiok was standing “close” to the man, but she did not “look at his face.”
 

Ibiok, with Acosta, subsequently observed
a lineup at a police station, where they met with Sergeant Madden and another
officer.  She noted that the officers did
not suggest who the suspect might be or if there was a suspect in the
lineup.   Ibiok explained that most of
the individuals in the lineup were “similar” and she identified appellant as one
of the men who robbed the bank.  She remembered
that appellant had been wearing a cap with sunglasses at the time of the
robbery.  When presented with
surveillance photographs, Ibiok acknowledged that appellant was also wearing a
rag across the top part of his head and the “only part” of his face that was
visible was his “cheek and nose and mouth area.”  She did not look at appellant’s face and only
noticed “his physical, as in his weight,” including his weight, height, and
build.  Ibiok explained that she “picked
who best fit what [she] remembered,” she based her identification on “the
physical aspect,” and she did not recognize appellant’s voice during the
lineup.  When asked if she could identify
appellant in the courtroom as the person who robbed her, she said that she was
“not certain.”

          Sergeant
Madden testified that after the robbery, officers received a tip upon which
they determined that appellant was a suspect in the robbery.  Two days after the robbery, officers went to
a residence where appellant was reportedly residing.  Officers met appellant’s grandmother, who
lived at this residence, and upon showing her surveillance pictures from the
bank, she “started crying.”  Madden
determined that appellant stayed at her residence, and he recovered a shirt and
a pillowcase “with some flowers on it,” which he believed matched the
description of the pillowcase used in the robbery.

          Madden
later placed appellant in a live lineup in which he included five other males
“with similar characteristics,” but he agreed that the other men “may not [have
been] as stocky” as appellant.   Madden presented the lineup to Acosta and
Ibiok and admonished them that a suspect might or might not have been in the
lineup.  Madden spoke with Acosta
individually after the lineup, and he positively identified appellant as the person
who had robbed him.  Ibiok also
identified appellant, and Madden did not recall Ibiok saying anything about not
being able to recognize his face.  

Standard of Review

We review the legal sufficiency of the evidence “by
considering all of the evidence in the light most favorable to the prosecution”
to determine whether any “rational trier of fact could have found the essential
elements of the offense beyond a reasonable doubt.”  Jackson v. Virginia, 443 U.S. 307, 318–19, 99 S. Ct.
2781, 2788–89 (1979).  Our role is that
of a due process safeguard, ensuring only the rationality of the trier of
fact’s finding of the essential elements of the offense beyond a reasonable
doubt.  See Moreno v. State, 755 S.W.2d 866, 867 (Tex.
Crim. App. 1988).  We give deference to
the responsibility of the fact finder to fairly resolve conflicts in testimony,
to weigh evidence, and to draw reasonable inferences from the facts.  Williams v. State, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007).  However, our duty requires us to “ensure that
the evidence presented actually supports a conclusion that the defendant
committed” the criminal offense of which he is accused.  Id. 

Sufficiency of the Evidence

          In his
sole point of error, appellant argues that the evidence is legally insufficient
to support his conviction because the State “failed to show that [he] was one
of the people who robbed” the bank and the facts that “tend to show that [he]
did not rob” the bank “overwhelmingly outweigh the evidence [that] shows that
he did.”  Appellant asserts that the
“robber’s clothing masked his identity,” Ibiok did not see the robber’s face,
Ibiok’s identification was based on “his stocky build,” he was not one of the
men “taken from the apartment complex who had been standing near the red Dodge
to the bank for possible identification,” and the DNA evidence “suggest[ed] a
low probability of guilt.”

          A
person commits a robbery if, in the course of committing theft and with intent
to obtain or maintain control of property, he intentionally or knowingly
threatens or places another in fear of imminent bodily injury or death. Tex. Penal Code Ann. § 29.02(a)(2)
(Vernon 2011).  A person commits
aggravated robbery if he commits robbery and uses or exhibits a deadly weapon.  Id.
§ 29.03(a)(2) (Vernon 2011).  A firearm
is considered a deadly weapon.  Id. § 1.07(a)(17)(A) (Vernon Supp. 2010).

          Here,
Acosta positively identified appellant in a lineup as the man who robbed the
bank.  Acosta testified that he
immediately identified appellant “as soon as [he] came out” for the lineup.  Acosta noted that, during the robbery, he had
been in close proximity to appellant for five or ten minutes.  Acosta explained that although appellant was wearing
a hat, sunglasses, and a bandana, he could see through the sunglasses and he
could see appellant’s “nose and the bottom of his face.”  Acosta also noted that he identified
appellant based on both his “appearance and voice,” and he again identified
appellant in the courtroom as the man who robbed him.  It is well established that the testimony of
a single eyewitness may be legally sufficient to support a conviction of a
criminal offense.  See Aguilar v. State, 468 S.W.2d 75, 77 (Tex. Crim. App. 1971)
(upholding a conviction for attempted murder where only one witness saw
appellant with a gun); Davis v. State,
177 S.W.3d 355, 359 (Tex. App.—Houston
[1st Dist.] 2005, no pet.) (affirming a conviction for aggravated robbery where
central issue involved a single witness’s credibility); see also Proctor v. State,
319 S.W.3d 175, 185 (Tex. App.—Houston
[1st Dist.] 2010, pet. ref’d); Lee v.
State, 176 S.W.3d 452, 458 (Tex. App.—Houston [1st Dist.] 2004), aff’d,
206 S.W.3d 620 (Tex. Crim. App. 2006).

          Additionally,
Sergeant Madden explained that he presented the lineup, which included appellant
and five other males “with similar characteristics,” to Acosta and Ibiok and
that both complainants identified appellant as the man who robbed the
bank.  Madden denied that Ibiok had
qualified her identification by telling him that she could not identify
appellant’s face.  Madden also stated
that, two days after the robbery, officers received a tip about appellant’s
potential involvement, he went to appellant’s grandmother’s house where appellant
was reportedly residing, and he recovered a shirt and a pillowcase “with some
flowers on it” that matched the description of the pillowcase used in the
robbery.

          As noted
by appellant, during trial, Ibiok did testify that she had informed officers
that she could not identify appellant by his face, but, rather, could only
identify him based upon physical characteristics such as body build.  This testimony does conflict with Madden’s about
the strength of her identification.  Ibiok
also agreed that she could not be certain of identifying appellant in the court
room.  In regard to the lineup, Madden, on
cross-examination, agreed that none of the other individuals included in the
lineup were as “stocky” as appellant.  But
he did testify that the men were similar, and Ibiok supported this
testimony.  Finally, HPD criminalist
Davis agreed that, based upon his review of biological samples taken from
appellant and from the hat found in the Dodge, there was “not a high
probability, but [appellant] could not be excluded from the hat.”  The jury was entitled to consider all of this
evidence, resolve any conflicts in the testimony, and evaluate the credibility
of the witnesses.  See Williams, 235 S.W.3d at 750 (stating that it
is the function of the trier of fact to resolve any conflict of fact, to weigh
any evidence, and to evaluate the credibility of any witnesses).  Accordingly, we hold that the evidence is legally sufficient to support appellant’s
conviction.    

          We
overrule appellant’s sole point of error. 


 

 

 

 

 

 

 

 

 

Conclusion

          We
affirm the judgment of the trial court.  

 

 

                                                                   Terry
Jennings

                                                                   Justice


 

Panel
consists of Justices Jennings, Bland, and Massengale.

Do
not publish.   Tex. R. App. P. 47.2(b).











[1]           See
Tex. Penal Code Ann. § 29.03
(Vernon 2011).